IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DICKSON INDUSTRIES, INC., an ) 
Oklahoma corporation, )
 )
                    Plaintiff, )
 )
v. )       Case No. CIV-02-467-HE
 )
PATENT ENFORCEMENT TEAM, L.L.C., a )
Florida limited liability company, )
 )
              Defendant. )

_____

**PROPOSED CLAIM CONSTRUCTION AND MARKMAN BRIEF OF
PLAINTIFF DICKSON INDUSTRIES, INC. ("DICKSON")**

_____

John A. Kenney
Anthony L. Rahhal
Michael D. McClintock
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439

ATTORNEYS FOR PLAINTIFF DICKSON
INDUSTRIES, INC.

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................2

II.     STATEMENT OF PROPOSED CLAIM CONSTRUCTION ...............................3

III.    CLAIM CONSTRUCTION AUTHORITIES ........................................................3

IV.     ANALYSIS OF DISPUTED CLAIM TERMS ......................................................6

        A.      "ROAD" AND "SURFACE OF A ROAD" ...........................................6

        B.      MOVING THE ROTATING CUTTING CYLINDER ALONG THE ROAD,
                AND SIMULTANEOUSLY, MOVING SAID CYLINDER ALTERNATELY
                UP ABOVE THE ROAD SURFACE AND DOWN INTO SAID ROAD
                SURFACE, TO THEREBY FORM A PLURALITY ...............................13

        C.      GENERALLY PARALLEL GROOVES ............................................15

V.      CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Andrew Corp. v. Gabriel Elecs. Inc.*,
   847 F.2d 819, 821-22 (Fed. Cir. 1988) ...................................................17

*Bell Atl. Network Servs., Inc. v. Covad Comm'n Group*,
   262 F.3d 1258, 1269 (Fed. Cir. 2001) ...................................................5, 6

*Ecolab, Inc. v. Envirochem, Inc.*,
   264 F.3d 1358, 1367 (Fed. Cir. 2001) .....................................................16

*Innova/Pure Water, Inc. v. Safari Water Filtratio Sys., Inc.*,
   381 F.3d 1111, 1116 (Fed. Cir. 2004) .......................................................4

*Nystrom v. Trex, Co.*,
   424 F.3d 1136, 1142, 76 U.S.P.Q.2d 1481 (Fed. Cir. 2005) ...................4, 5

*Pentec, Inc. v. Graphic Controls Corp.*,
   776 F.2d 309, 313 (Fed. Cir. 1985).........................................................10

*Pfizer, Inc. v. Teva Pahrm., USA, Inc.*,
   429 F.3d 1373 ........................................................................................16

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..............................................3, 4, 5, 8, 10

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336, 1343 (Fed. Cir. 2001).......................................................4

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576, 1582 (Fed. Cir. 1996)................................................4, 8, 16

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
   442 F.3d 1322, 1326 (Fed. Cir. 2006)......................................5, 6, 8, 9, 13

The plaintiff, Dickson Industries, Inc. ("Dickson"), submits the following brief and list of authorities to the Court in support of its proposed interpretation of Claim 5 of U.S. Patent No. 4,701,069.

## I. INTRODUCTION

Dickson is in the business of manufacturing and selling machines that are used in road construction and maintenance.  The Dickson machine at issue in this lawsuit is used to cut grooves for rumble strips on the shoulder of a road (a "rumble strip cutter").

The patent at issue in this case is U.S. Patent No. 4,701,069 (the '069 Patent), issued on October 20, 1987, to James R. Whitney.  The defendant, Patent Enforcement Team, L.L.C. ("Defendant"), purchased and owns the '069 Patent through assignment.  As stated in the _Abstract_, the '069 Patent is directed to a "method for cutting rain drainage grooves in a road" and an apparatus for making them.  Defendant alleges the operation of Dickson's rumble strip cutter infringes method Claim 5 of the '069 Patent.  Claim 5 of the '069 Patent (the only claim at issue in this lawsuit) provides as follows:

> 5.  A method of forming a plurality of grooves in the surface of a road, the method including the steps of rotating a cutting cylinder about an axis which is substantially horizontal and which axis is at an angle to the longitudinal direction of the road, moving the rotating cutting cylinder along the road, and simultaneously, moving said cylinder alternately up above the road surface and down into said road surface, to thereby form a plurality of generally parallel grooves in the road each groove having a forward side wall and a rearward side wall.

A copy of the '069 Patent is attached hereto as Exhibit "1."  Currently before the Court is the issue of the proper construction of certain disputed terms of Claim 5 of the '069 Patent, which are discussed in detail below.

## II.  STATEMENT OF PROPOSED CLAIM CONSTRUCTION

The following claim chart sets forth Claim 5 with disputed claim terms in italics and provides Dickson's proposed definitions:

| CLAIM 5 | PROPOSED CONSTRUCTION |
|---|---|
| 5.  A method of forming a plurality of grooves | |
| in the **surface** of a **road** | "road" means that portion of a thoroughfare or highway designed or ordinarily used for vehicular travel, and does not include the shoulder. <br><br> "surface of a road" or "road surface" means the surface of the road as defined above and does not include the surface of the shoulder. |
| the method including the steps of rotating a cutting cylinder about an axis which is substantially horizontal and which axis is at an angle to the longitudinal direction of the road, | |
| ***moving the rotating cutting cylinder along the road, and simultaneously, moving said cylinder alternately up above the road surface and down into said road surface, to thereby form a plurality*** | The cutting cylinder rotates, moves along the road, and up and down while each groove is being cut. |
| of ***generally parallel grooves*** in the road each groove having a forward side wall and a rearward side wall. | "generally parallel grooves" means grooves in which an axis parallel to the length or width dimension of a groove is parallel to the corresponding axis of one or more additional grooves. |

## III.  CLAIM CONSTRUCTION AUTHORITIES

The Court of Appeals for the Federal Circuit ("the Federal Circuit") recently set forth the governing principles of claim construction in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.

Cir. 2005).  The Federal Circuit reiterated the long-standing rule that words in a patent claim are generally given their ordinary and customary meaning, and that the "ordinary and customary meaning" is the plain ordinary meaning that would be attributed to claim terms by "one of ordinary skill in the art." *Phillips,* 415 F.3d at 1312-13; *Nystrom v. Trex Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) ("Patent claim construction analysis [begins] with the words of the claim," which are given the meaning that they "would have to a person of ordinary skill in the art in question at the time of the invention.").  While the ordinary meaning of a term may be apparent to a lay person in some cases, that meaning is often not immediately apparent.  *Phillips*, 415 F.3d at 1314.  The court in such cases must make an objective inquiry into the meaning of claim terms using publicly available sources.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys. Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).  "Those sources include the words of the claims themselves, the . . . specification, the prosecution history, and extrinsic evidence concerning relative scientific principles, the meaning of technical terms and the state of the art."  *Phillips*, 415 F.3d at 1314; *Innova/Pure Water,* 381 F.3d at 1116 (noting that sources include the words of the claims themselves, the specification, prosecution history and extrinsic evidence); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1343 (Fed. Cir. 2001) (same).

The specification has been referred to as "a concordance for the claims . . . [and] is thus the primary basis for construing claims."  *Phillips,* 415 F.3d 1315.  In many cases, the specification is dispositive with regard to the meaning of claim terms.  *Id.* at 1316; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (noting the "specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication").  Both asserted and non-asserted claims can also provide valuable information as to the meaning of particular claim terms.  *Phillips,* 415 F.3d at 1314.

3

In addition to the specification, the prosecution history may also be considered. *Nystrom,* 424 F.3d at 1142. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Id. See also*, *Phillips*, 415 F.3d at 1315 ("[T]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history"). While the prosecution history is regularly used as a claim construction tool, "it often lacks the clarity of the specification" because it "represents the ongoing negotiations between the PTO and applicant" and thus "often lacks the clarity of the specification." *Id.* at 1317.

Extrinsic evidence may also a useful construction tool. Because it is less significant than the intrinsic record, one should not place undue reliance on extrinsic evidence and thereby pose the risk that it will be used to change the meaning of claims "in derogation of the indisputable public records consisting of the claims, the specification, and the prosecution history, thereby undermining the public notice function of patents." *Nystrom*, 424 F.3d at 1143. Thus, extrinsic evidence should be used only to provide an understanding of the claims, and cannot be used to vary, contradict, expand or limit claim language as defined by the intrinsic evidence. *Bell Atl. Network Servs., Inc. v. Covad Comm'n Group*, 262 F.3d 1258, 1269 (Fed. Cir. 2001) (stating that "extrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history").

Finally, the Federal Circuit has noted that "the legal function of giving meaning to claim terms [i.e., *Markman* claim construction] always takes place in the context of a specific accused infringing device or process." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,

442 F.3d 1322, 1326 (Fed. Cir. 2006).  Thus, "[w]hile a trial court should certainly not prejudice

the ultimate infringement analysis by construing claims with an aim to include or exclude an

accused product or process, knowledge of that product or process provides meaningful context

for the first step of the infringement analysis, claim construction."  *Id.* at 1326 (holding that

information about the accused devise is necessary context for accurate claim construction).

## IV.  ANALYSIS OF DISPUTED CLAIM TERMS

Dickson herein addresses the proper interpretation of the following three terms as

used in the '069 Patent:  (1) "road" and "surface of a road;" (2) "moving the rotating cutting

cylinder along the road, and simultaneously, moving said cylinder alternately up above the road

surface and down into said road surface, to thereby form a plurality;" and (3) "generally parallel

grooves."

### A.  "ROAD" AND "SURFACE OF A ROAD"

"Road" in Claim 5 means the portion of a thoroughfare or highway designed or

ordinarily used for vehicular travel and does not include the shoulder.  "Surface of a road" or

"road surface" means the surface of the road as defined above and excludes the surface of the

shoulder.  The claim construction apparently urged by PET defines a road as including a travel

lane *and a shoulder lane*.  Defendant's proffered definition is incorrect and contrary to the

definition of the term "road" as clearly set forth in the '069 Patent specification and as would be

understood by one skilled in the art.

The specification provides clear definitions for the terms "road" and "surface of a

road."  In the Summary of the Invention, the '069 Patent specification provides that the grooves

which are to be produced by the method at issue are horizontal or are tilted so that water "will

flow along them and off the road surface onto the road shoulder." *See* Exh. "1," at Col. 2, lines

1-4.  Moreover, at column 3, lines 41-44, the specification further confirms this distinction:

> As shown at FIGS. 2 and 4, road **70** is provided, conventionally,
> *with a shoulder* **74** *below the edges of the road*.

*Id.* at Col. 3, lines 41-44 (emphasis added).  The specification consistently identifies a road edge

that separates the road from the shoulder and teaches that a rotating cutting cylinder drops onto

surface of the *road* to cut grooves.  *Id.* at Col. 3, lines 52-56:

> It is usually desired, however, that grooves **76** slope slightly
> towards the rim **73** of road **72** to thereby enhance drainage of rain
> water from the grooves onto the side or shoulder **74** (see FIG. 2) of
> the road.

*Id.* at Col. 4, lines 37-41.  The patent drawings depicted below show and designate the road **72**

and the shoulder **74** as separate elements.  Road **72** has edge **73** and shoulder **74** is positioned at

the edge **73** of the road **72**.

<u>*Road* **72** Expressly Distinguished From *Shoulder* **74**</u>

In short, the specification leaves no room for an interpretation of the term "road" to include the shoulder.  Because the "road" and shoulder are exclusive, the "surface of a road" does not include and specifically excludes the surface of the shoulder.[1]

In addition to the specification, the distinction between "road" and shoulder is also clearly drawn in the other claims in the '069 Patent, which are a further source for determining the meaning of disputed claims.  *Vitronics*, 90 F.3d at 1582 (noting that the court should "look to the words of the claims themselves, both asserted *and nonasserted*, to define the scope of the patented invention") (emphasis added).  "[C]laim terms are normally used consistently throughout the patent" so that the usage of a term in one claim will "illuminate the meaning of the same term in other claims."  *Phillips*, 415 F.3d at 1314 (further noting that differences in claims can also be a useful guide).  *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1328 (Fed. Cir. 2006) (holding that "the same terms appearing in different claims in the same patent . . . should have the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims").

In the present case, the unasserted claims of the '069 Patent draw the same clear distinction between "road" and shoulder as does Claim 5.  For example, Claim 1 of the '069 Patent provides:

> A road marker system including a road *having a shoulder below an edge of the road*, a plurality of grooves intersecting said edge of said road … whereby rain water will run off the sides of the grooves and into the bottom of the grooves and out of said bottoms to said road edge and *onto said shoulder*.

---

[1]  The original prosecution history of the '069 Patent provides no insight and adds nothing that would alter the definition provided by the specification.

7

Exhibit "1," Col. 5, lines. 20-42 (emphasis added).   In application, a road cannot have a "shoulder below the edge of the road" if the road includes the shoulder.   Thus, it is apparent from the plain language of Claim 1 that road and shoulder are separate elements.   As discussed in *Wilson Sporting Goods Co.*, this distinction is consistent throughout the claims of the '069 Patent, and the usage is <u>consistent</u> with the usage in the specification and its illustrations and drawings – all evidencing that Dickson's proposed claim construction is correct.

In addition to the intrinsic evidence outlined above, if extrinsic evidence is considered, available technical definitions further support Dickson's proposed definition.   The 1988 edition of the "Manual on Uniform Traffic Control Devices" for streets and highways, which is contemporaneous with the timeframe of the invention at issue in this lawsuit, defines roadway as follows:

> "**roadway**":
>
> <u>that portion of a highway improved, designed, or ordinarily used for vehicular travel exclusive of the berm or shoulder</u>.  In the event a highway includes two or more separate roadways, the term roadway as used herein refers to any such roadway separately but not to all such roads collectively.

Manual on Uniform Traffic Control Devices (1988 ed.), the relevant portions of which are attached hereto as Exhibit "2," at p. 1A-9 (emphasis added).

Beyond dictionaries, the fact that the term "road" in Claim 5 does not include the shoulder is confirmed by the testimony of the inventor for the '069 Patent, James R. Whitney.

Mr. Whitney, who as the inventor is presumed to be one of ordinary skill in the art,[2] stated unequivocally that at the time the application for the '069 Patent was drafted, he did not intend the road surface definition to include the shoulder.  Mr. Whitney testified as follows:

> Q.      [By Mr. Kenney]:  Well, tell us what you understand the term "road surface" means in your patent.
>
> A.      In my patent, it means the road, _not the shoulder_.

Whitney Depo., attached hereto as Exhibit "3," p. 116, lines 13-16 (emphasis added).

> Q.      And that that because of your belief that -- that the patent did not apply -- apply to cutting grooves in the road surface and not –
>
> A.      Not – but did _not apply to cutting grooves in the shoulder_.

Whitney Depo., Exh. "3," p. 128, lines 7-12 (emphasis added).

> Q.      Okay.  And what did you -- what did you discuss with either of these gentlemen about your patents?
>
> A.      It was my concept that my grooves covered only the edge of the road surface _rather than the shoulder_.  That was my idea -- or _that was the intent_.

Whitney Depo., Exh. "3," p. 161, lines 14-20 (emphasis added).  Mr. Whitney also admitted he was aware that another company cut grooves in the shoulder of the road prior to the filing of the application for the '069 Patent, which is why his invention only claimed the road and not the shoulder.

---

[2]    In the present case, Mr. Whitney has over forty years experience in the road construction business, primarily related to painting and striping.  _See_ Whitney Depo., Exh. "3," at p. 10.  During this time he has used grinding equipment, designed and manufactured his machines to cut pavement, and observed operation of pavement grinding and cutting operations. _See id_. at p.16; 20-22; 29; 77-78; and 80-81.  In addition, it is well established "that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art."  _Phillips_, 415 F.3d at 1313; _Pentec. Inc. v. Graphic Controls Corp_, 776 F.2d 309, 313 (Fed. Cir. 1985) ("Those of ordinary skill in the art may be presumed to have knowledge of arts reasonably pertinent to the particular problem with which the inventor was involved.").

9

Q.      [By Mr. Kenney]:  Well – and I'm particularly interested in whether or not you observed anything before your patent . . . that [ ] gave you some trigger for an idea that resulted –

A.      No.

Q.       -- in your --

A.      No.

Q.      -- edge cutting patent?

A.      Well, okay.  Late 70's, early 80's, I had been to Florida and I noticed that – and I've now found out that Thomas Grinding was the one that done it – had cut grooves on the shoulder.  And they did it – the same size grooves, I think, as they are today . . . .

        But I actually got out of my car and measured them, and they were – looked to me like perfect, that I though they had been cut automatically rather than one at a time.  And that's specifically why in my patent application I left out the edge – or the shoulder of the road.

Q.      Did you disclose to your lawyer this observation that where you'd seen –

A.      Yes.

Q.      -- things cut that appeared to be automatic?

A.      Yes.

Q.      And you told him it was on the shoulder of the road?

A.      Yes.

Q.      So, he drafted the patent so that it would cover only the roadway itself –

A.      That's correct.

Q.      -- and not the shoulder, correct?

A.      That's correct.

Whitney Depo., Exh. "3," at p. 80-81.[3]  Thus, it is apparent that Mr. Whitney (the inventor who is considered as a matter of law to be one skilled in the art) understood that "road" means the portion of a thoroughfare or highway designed or ordinarily used for vehicular travel *and does not include the shoulder*.

It is further useful to note that after commencement of this lawsuit, on June 28, 2002, a request for re-examination of the '069 Patent was made by a third party, which was granted by the USPTO on October 3, 2002.  As a result, a stay was agreed upon and granted in this lawsuit pending resolution of re-exam proceeding.  In the *ex-parte* re-examination, Claims 8-13 of the '069 Patent were cancelled, and Re-examination Certificate U.S. 4,701,069 C1 issued with only Claims 1-7.  Also in the *ex-parte* re-examination, Defendant requested an entirely new claim be added to the '069 Patent, Claim 14, which was allowed by the examiner.  Copies of the original prosecution history and the re-examination prosecution history are attached hereto as Exhibit 4 and 5.  The re-examination certificate is attached as Exhibit 6.

In new Claim 14, Defendant — apparently realizing that road does not include shoulder so that its infringement claim would fail — improperly attempted after-the-fact to define "road" to *include* shoulder.  New Claim 14 is directed to a method of forming a plurality of rumble strips in the road.  New Claim 14 provides in relevant part:

> said road including at least one travel lane portion and shoulder portion adjacent the travel lane portion on at least one side of the travel lane portion,

Exh. "4," '069 Re-Examination Certificate, Col. 1, lines 23-26.

New Claim 14 is not at issue in this lawsuit because Defendant has not alleged infringement of new Claim 14 or added it to the pleadings.  And, although not currently the issue to be addressed, Dickson believes new Claim 14 is clearly invalid on numerous grounds, not the

---

[3]  Accordingly, Claim 5 of the '069 Patent is anticipated and therefore invalid.  *See, e.g.*, 35 U.S.C. § 102(a) (baring a patent on an invention "known or used by others . . . before the invention thereof by the applicant for patent").

least of which is failing to disclose to the USPTO in the re-examination preceding the unambiguous opinion of Mr. Whitney that in his invention "road" does not include shoulder.[4]

Regardless, relevant to the issue of claim construction is how Defendant's activities in the re-exam proceeding speak volumes regarding their true understanding of the definition of "road" in Claim 5.  Defendant's after-the-fact effort to expand the scope of its patent – while choosing apparently not to speak to the inventor – evidences that Defendant knew of the clear distinction between road and shoulder.

Accordingly, consistent with the plain language of Claim 5, the specification, the unasserted claims of the '069 Patent, and the extrinsic evidence presented, the term "road" means the portion of a thoroughfare or highway designed or ordinarily used for vehicular travel and does not include the shoulder.  "Surface of the road" or "road surface" means the surface of the road as defined above and excludes the surface of the shoulder.  Any argument that "road" in Claim 5 of the '069 Patent includes the shoulder should be rejected.

**B.**   **MOVING THE ROTATING CUTTING CYLINDER ALONG THE ROAD, AND *SIMULTANEOUSLY*, MOVING SAID CYLINDER ALTERNATELY UP ABOVE THE ROAD SURFACE AND DOWN INTO SAID ROAD SURFACE, TO THEREBY FORM A PLURALITY**

The plain language of Claim 5, which is the guiding principle in all claim construction analysis, yields the definition proposed by Dickson.  The term "simultaneously" is defined as "occurring at the same time."  Thus, the disputed limitation of Claim 5, which is set forth above and at issue in this section, means:

---

[4] "[K]nowledge of [the] product or process [alleged to infringe] provides meaningful context for the first step of the infringement analysis, claim construction." *Wilson Sporting Goods*, 442 F.3d at 1326-27.  Here, Claim 5 is directed to a method for forming grooves in a "road."  The road is generally of concrete or heavy duty asphalt material, while the shoulder is generally different material and thickness, and is not designed for transportation.  The shoulder merely provides an improved surface on which to move off of the road if necessary, and rumble strips are cut in the shoulder to alert a driver that has inadvertently left the road surface.  Through discovery and investigation Dickson has learned that most and probably all of the use of its equipment has been in connection with cutting of rumble strips in the shoulder of the road.

> The rotating cutting cylinder moves along the road, and at the same time, moves up and down to cut a groove.  The process is repeated to cut a plurality of grooves.

PET contends the cutting cylinder must move forward while it is _simultaneously and continuously_ moved up and down.  This definition proposed by PET is an improperly narrow construction aimed at avoiding prior art.

There is nothing in the plain language of the claim or specification that limits the claim as urged by Defendant.  The claim only requires that the cutting head be moved forward while it is simultaneously moved up and down into the road surface.  Nothing in the claim or specification requires _continuous_ up and down motion while the cutting cylinder is moved forward.  The specification at column 4, lines 7-10 states:

> The up and down movement of cutting cylinder 60 is _preferably uniformly periodic_ and is effected by either _manually_ or _automatically actuating_ the hydraulic input/exhaust controls of linear motor 34.

Although it is "preferably" uniformly periodic in up and down movement and simultaneously forward movement, that is not required.  Thus, the claim as worded also covers a machine that moves the cutting cylinder forward while the cutting head is moved down into the road surface and then up above it followed by a movement of the machine forward any number of feet before it is manually actuated for movement down and up again.[5]  The PET definition seeks to improperly incorporate limitations from general arguments made during re-examination to narrow the claim beyond the ordinary meaning of the words in the claim.  Again, PET attempted to solve this problem by revising this wording in Claim 14 without disclosing Mr. Whitney's observation of the target saw prior to filing the application.   As such, PET's proposed construction should be rejected, and Dickson's construction, which is consistent with the plain meaning of the words, should be adopted.

_____

[5]   This is how the target saw operates, which is a machine found in the prior art.  Mr. Whitney, the sole named inventor in the '069 Patent, has admitted he observed use of a target saw to cut grooves for reflectors in the road _prior to the filing of the application_ for the '069 Patent using the method described in Claim 5 if Dickson's claim construction is adopted.  _See_ Whitney Depo., Exh. "3," at p. 20 line 14 through p. 22 line 7; p. 28 line 19 through p. 30 line 6.

C.    GENERALLY PARALLEL GROOVES

"Generally parallel grooves" should be defined simply to mean that the grooves are parallel in one direction so that the axis of the width or length of a groove is parallel to the corresponding axis of one or more additional grooves.  For example, both figures below depict a road with parallel grooves.  The layout in FIG. A shows a series of parallel grooves, each being parallel along the axis of the shorter dimension of the grove, with the shorter dimension referred to as the "width."   FIG. B. shows a series of parallel grooves, each being parallel along the axis of the longer dimension of the groves, with the longer dimension referred to as the "length."



**FIG. A**                    **FIG. B**

Defendant asserts that "generally parallel grooves" in Claim 5 means grooves with elongated side walls that extend parallel to each other and are perpendicular to the longitudinal travel direction of the road.  The definition proposed by Defendant would exclude the grooves in FIG. A above and violates long-recognized construction principles.

14

The Federal Circuit has repeatedly stated that a "claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct." *Pfizer, Inc., v. Teva Pharm.,* 429 F.3d 1364, 1374 (Fed Cir. 2005); *Vitronics*, 90 F.3d at 1583 (same). In the present case, Defendant's proposed definition does not encompass the preferred embodiment depicted in FIGS. 1 and 4 of the '069 Patent and as described in the specification. Note that the "sidewalls" in the preferred embodiment depicted below are not perpendicular to the longitudinal direction of travel of the road.



In the preferred embodiment, the grooves are identified at column 4, line 4 as parallel grooves. The specification states that the "grooves are *normally* at right angles to the direction of the road." *See* Exh. "1," at Col. 4, lines 4-6. While the *normal* configuration may be grooves like those shown in FIGS. 1 and 4 of the '069 Patent, the use of the term *normally*

confirms the existence of other possible configurations.  *See, e.g., Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (noting that "words of approximation" like about, generally and substantially are descriptive terms "commonly used in patent claims to avoid a strict numerical boundary to the specified parameter"); *Andrew Corp. v. Gabriel Elecs. Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) (noting that terms such as "approach each other," "close to," "substantially equal," and "closely approximate" are ubiquitously used in patent claims and that "[s]uch usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts").

Claim 5 does not limit itself to the "normal" configuration.  Instead, Claim 5 broadly calls for "generally parallel grooves."  Thus, Claim 5 should be read to cover configurations other than the *normal* configuration of the preferred embodiment, such as the configurations in FIG. A above, where the groves are parallel along the axis of the width of the grooves and FIG. B where the grooves are parallel along the axis of the length.  Dickson's proposed definition is consistent with this distinction made in the specification.  It does not require the walls of the groove to be parallel or perpendicular to the road surface.  If the axis of the grooves are parallel, the sides may or may not be parallel as shown in the embodiments depicted in the specification.  Nevertheless, these are "generally parallel grooves" which is all that is called for in the claim.  Dickson's proposed definition is supported by the specification. Again, the definition proposed by PET improperly reads limitations (i.e. sidewalls parallel to each other and perpendicular to the longitudinal travel direction of the road) into Claim 5 in an attempt to avoid invalidating prior art.

16

## V.  CONCLUSION

For the reasons set forth above, Dickson moves the Court to adopt the proposed claim constructions discussed herein and summarized in the table below.

| CLAIM 5 | PROPOSED CONSTRUCTION |
|---|---|
| 5.  A method of forming a plurality of grooves | |
| in the **surface** of a **road** | "road" means that portion of a thoroughfare or highway designed or ordinarily used for vehicular travel, and does not include the shoulder.<br><br>"surface of the road" or "road surface" means the surface of the road as defined above and does not include the surface of the shoulder. |
| the method including the steps of rotating a cutting cylinder about an axis which is substantially horizontal and which axis is at an angle to the longitudinal direction of the road, | |
| **moving the rotating cutting cylinder along the road, and simultaneously, moving said cylinder alternately up above the road surface and down into said road surface, to thereby form a plurality** | The cutting cylinder rotates, moves along the road, and up and down while each groove is being cut. |
| of **generally parallel grooves** in the road each groove having a forward side wall and a rearward side wall. | "generally parallel grooves" means grooves in which an axis parallel to the length or width dimension of a groove is parallel to the corresponding axis of one or more additional grooves. |

1784516_1.DOC

Respectfully submitted this **15**[th] day of **June, 2006**.

*s/ Michael D. McClintock*
John A. Kenney, OBA #4976
Anthony L. Rahhal
Michael D. McClintock, OBA #18105
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, OK  73102
405/235-9621
405/235-0439 (Fax)

**ATTORNEYS FOR DECLARATORY JUDGMENT
PLAINTIFF DICKSON INDUSTRIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2006, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants for this case:

Joseph W. Bain, Esq.
Akerman, Senterfitt & Edison, PA
Esperante Building, Fourth Floor
222 Lakeview Avenue
West Palm Beach, FL  33401
Fax:    561/659-6313

Michael Salem, OBA#7876
Salem Law Offices
111 North Peters, Suite 100
Norman, OK  73069-7235
Fax:    366-8329

David A. Cheek, Esq.
Robert C. Thompson, Esq.
Cheek & Gelner, P.L.L.C.
6301 Waterford Blvd., Suite 320
Oklahoma City, OK  73118-1157
Fax:    286-9670

*s/ Michael D. McClintock*

1784516_1.DOC