IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DICKSON INDUSTRIES, INC., an Oklahoma corporation, <br><br>Plaintiff,<br>vs.<br><br>PATENT ENFORCEMENT TEAM, L.L.C., a Florida limited liability company,<br><br>Defendant. | NO. CIV-02-0467-HE |

## ORDER

Plaintiff manufactures and sells machines used to cut "rumble strips" in roads. It seeks to declare a portion of United States Patent No. 4,701,069 invalid and unenforceable. The patent, which relates to the process of cutting rain drainage grooves in the surface of a road, was originally issued on October 20, 1987, to James R. Whitney. Mr. Whitney subsequently sold the patent to defendant. Defendant, as owner of the patent, asserts a counterclaim of infringement against plaintiff.

An infringement analysis involves two steps. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996). The first step involves construing the disputed terms of the patent and is "exclusively within the province of the court." Id. at 372. The second step, determining whether infringement has occurred, is a question of fact. IMS Tech., Inc. v. Hass Auto., Inc., 206 F.3d 1422, 1429 (Fed. Cir. 2000). For purposes of this order, the court is concerned only with construing the patent. The parties have filed their

respective *Markman* briefs related to the construction of claim 5 of the patent and the court held a *Markman* hearing on September 18, 2006.[1]

When construing the terms of a patent, the court first looks to the language of the claim itself to determine what the inventor regards as his or her invention. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). The words of the claim "'are generally given their ordinary and customary meaning.'" Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In a patent case, "the ordinary and customary meaning of a claim term is the meaning that term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1313. A "person of ordinary skill in the field of the invention is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. The specification describes the invention set forth in the claims and helps to ascertain the scope of such claims. It "'is always highly relevant to the claim construction analysis'" because "'it is the single best guide to the meaning of a disputed term.'" Phillips, 415 F.3d at 1315 (quoting Vitronics, 90 F.3d at 1582).

The claims of a patent "do not stand alone" but are a part of "a fully integrated written instrument." Phillips, 415 F.3d at 1315 (internal quotations omitted). That is why other claims of the patent, "both asserted and unasserted," also prove valuable to the interpretation of a claim term. Id. at 1314. Normally, claim terms are used consistently

---

[1] *Third-party defendants Midstate Traffic Controls, Inc. and Sawhorse Investments, LLC have both adopted plaintiff's proposed claim construction. [Doc. Nos. 88 and 91].*

throughout the patent and a term's use in one claim can shed light on its meaning in another claim. Id.

In addition to the patent document itself, the court may also consider the patent's prosecution history, if it is in evidence. Id. at 1317. This history consists of the entire record before the United States Patent and Trademark Office ("PTO") and "includes the prior art cited during the patent exam." Id. The prosecution history, like the specification, "provides evidence of how the PTO and the inventor understood the patent." Id. However, it is generally not as useful for claim construction because it is the product of an ongoing negotiation between the inventor and the PTO and may lack clarity. Id.

Finally, in addition to the intrinsic evidence, the court may rely on extrinsic evidence, consisting of "expert and inventor testimony, dictionaries, and learned treatises." Id. This evidence is considered less reliable because it is "not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purposes of explaining the patent's scope and meaning." Id. at 1318. However, it may be helpful in providing background on the technology at issue and guide in understanding the technical aspects of the patent. Id.

In this case, the parties dispute the construction of claim 5 of the patent.[2] This claim, with the disputed terms highlighted, states as follows:

---

[2] *On April 11, 2006, the PTO issued an "Ex Parte Reexamination Certificate" which confirmed the patentability of claims 1-7 of the patent, cancelled claims 8-13 and added a new claim 14. See Doc. #78, Ex. 1.*

3

A method of forming a plurality of grooves in the *surface of a road*, the method including the steps of rotating a cutting cylinder about an axis which is substantially horizontal and which axis is at an angle to the longitudinal direction of the road, *moving the rotating cutting cylinder along the road, and simultaneously, moving said cylinder alternately up above the road surface and down into said road surface, to thereby form a plurality* of *generally parallel grooves* in the road each groove having a forward side wall and a rearward side wall.

The parties first dispute whether the inventor's use of the term "road" in claim 5 was intended to encompass the cutting of grooves on the shoulder of a road. Defendant asserts that it was intended as such and plaintiff asserts that it was not. The patent does not particularly define the term road and the term's general definition is simply "an open way for the passage of vehicles, persons, and animals." *Webster's Third New International Dictionary, 1963 (2002)*. However, considering the language of the entire patent, including the specification, the court concludes the term road should not be read to include a shoulder.

The primary purpose of the patent is to drain water from the road surface onto the shoulder by cutting grooves on or near the "edge" of the road. See "Background of the Invention," ¶1; "Summary of the Invention," Column 2, lines 2-4. The grooves secondarily serve as rumble strips to alert a driver to the edge of the road. See "Detailed Description of the Invention," ¶8, lines 25-28. For purposes of both, the patent refers to the edge and surface of the road distinct from the shoulder. In addition, the figures representing the embodiment of the invention indicate that the grooves are cut into the road surface not the shoulder. See, e.g., Figs. 2 & 4:



Figure 2

Figure 4

Accordingly, the court construes the term "road" in claim 5 of the patent to mean that portion of the roadway designed or ordinarily used for travel which does not include the shoulder.[3]

---

[3] *Plaintiff has submitted extrinsic evidence on this subject in the form of the deposition testimony of Inventor Whitney. While the court affords little weight to such after-the-fact testimony, it notes the inventor's recent statement of his former intentions is consistent with the court's construction.*

With respect to the second disputed phrase, both parties agree that the method of cutting grooves as defined in the patent requires three simultaneous moves – moving the cutting cylinder along the road while it also moves up and then down to cut a groove. Defendant states that the language of claim 5 describes a continuous movement through the cutting of at least two or more grooves as opposed to stopping and starting the cutting cylinder between cuts. Plaintiff claims this interpretation is too narrow and asserts that the language also covers a method of cutting whereby the machine, essentially, stops between cuts and then is moved forward for the next cut. This method is referred to as "stopping and indexing." Plaintiff claims that while the preferred method may be continuous, that is not the only method embodied by the claim.

In construing the meaning of these disputed terms, the court need look no further than the language of claim 5 itself. First, the claim refers to a method of forming "grooves" rather than a groove. Thus illustrating that more than one groove will be cut during the process. Second, the use of the term "plurality," which refers to a number greater than one,[4] anticipates the cutting of at least two grooves. Finally, a repetitive cut is consistent with the entire language of the patent which advises that the method of cutting grooves is intended to be continuous. <u>See, e.g.</u>, Summary of the Invention; Detailed Description of the Invention, ¶7. Accordingly, the court construes the disputed language to mean that the cutting cylinder simultaneously rotates, moves along the road and moves up and down through at least two cuts.

---

[4] *Webster's Third New International Dictionary*, 1745 (2002).

Lastly, the parties dispute whether the phrase "generally parallel grooves" includes end-to-end or "co-linear" grooves such as those depicted in Fig. A of plaintiff's *Markman* brief:



**FIG. A**

Plaintiff contends that such end-to-end grooves are anticipated by claim 5 because they are capable of being parallel along their width dimension. However, plaintiff's proposed construction contradicts the very purpose of the patent which is primarily rain drainage and secondarily rumble strips. In addition, it ignores clarifying language in the claim itself. The words of the patent refer to the "formation of transverse grooves in a road."[5] Claim 5 states that such grooves have a "forward side wall and rearward side wall." Claim 5, lines 16-17. End-to-end grooves, which would not lie transverse or crosswise to

---

[5] *See Background of the Invention.*

the longitudinal direction of the road, would not have a forward or rearward side wall as required by claim 5 because their sides would run parallel to the longitudinal direction of the road.[6] Further, the patent figures do not depict end-to-end grooves as the preferred embodiment of the invention. See Figs. 2, 3, & 4:



Accordingly, the court construes the disputed language to mean grooves which are arranged side by side with their long sides parallel to each other and which are generally oriented transverse to the travel direction of the road.

The disputed portions of claim 5 will be construed for all purposes in this action as set forth above. As the claim construction phase of this matter has been concluded, the parties are directed to submit, within **ten (10) days** of the date of this order, a proposed joint scheduling order setting out a proposed schedule for completion of proceedings in this case.

---

[6]*Thus, they would be more accurately described as having "end walls" rather than side walls.*

**IT IS SO ORDERED**.

Dated this 13th day of October, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE