**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DICKSON INDUSTRIES, INC**., <br> an Oklahoma corporation, <br><br> Plaintiff, <br><br> vs. <br><br> **PATENT ENFORCEMENT TEAM, L.L.C.**, <br> a Florida limited liability company, <br><br> Defendant, <br><br> vs. <br><br> **MIDSTATE TRAFFIC CONTROLS, INC**., <br> an Oklahoma corporation, <br><br> and <br><br> **SAWHORSE INVESTMENTS, L.L.C.**, <br> an Oklahoma limited liability company, <br><br> Third-party defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )      **CASE NO. CIV-02-467-HE** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT PATENT ENFORCEMENT TEAM LLC'S PROPOSED**
**JURY INSTRUCTIONS**

Pursuant to the Court's, Defendant Patent Enforcement Team, LLC presents the following

proposed jury instructions:

**INSTRUCTION NO. __**[1]

**EXPLANATION TO JURY PANEL OF VOIR DIRE**

As possible jurors you will be questioned to determine your qualifications to serve in this case.  The purpose of these questions is to obtain a fair jury.  Since this is an important part of the trial, it is necessary that you be given an oath to answer truthfully all questions asked you about your qualifications to serve as jurors.  Will you please stand, raise your right hand, and the oath will now be given to you by _____.

---

[1] Oklahoma Uniform Jury Instructions § 1.1

**INSTRUCTION NO. __[2]**

**OATH ON VOIR DIRE**

Do you solemnly swear that you will truly and fully answer all questions asked you by the judge or the lawyers to serve as a juror in the case now on trial, so help you god?

- OR -

Do you affirm under the pains and penalties of perjury to truly and fully answer all questions asked you by the judge or lawyers to serve as a juror in the case now on trial?

---

[2] Oklahoma Uniform Jury Instructions § 1.2

# INSTRUCTION NO. __[3]

## JURY'S DUTIES - TO BE GIVEN AFTER JURY IS SWORN

Members of the Jury: I will now explain to you your duties as jurors.  It is vital to the administration of justice that you fully understand and faithfully perform these duties.

It is my duty to determine all of the law applicable to this case and to inform you of that law by these instructions and by the instructions that I will give you after all evidence has been received. It is your duty to accept and follow all of these instructions as a whole, not accepting one or more of these instructions and disregarding the others.

It is your duty to determine the facts of this case from the evidence produced in open court.  It is then your duty to apply the law, as determined by the court, to the facts as determined by you, and thus render a verdict.  You should not allow sympathy or prejudice to influence your decision.  Your decision should be based upon probabilities, and not possibilities.  It may not be based upon speculation or guesswork.

The evidence which you are to consider consists of the testimony of the witnesses; the exhibits, if any, admitted into evidence; any facts admitted or agreed to by the attorneys; and any facts which I instruct you to accept as true.  The term "witness" means anyone who testifies in person, or by deposition, including the parties.

The production of evidence in court is governed by rules of law.  From time to time it may be the duty of the attorneys to object to the production of evidence and my duty to rule on these objections.  If I say the objection is sustained, you must not consider the testimony or exhibit covered by the objection.  If I say the objection is overruled, you may consider the testimony or exhibit covered by the objection.  The attorney's objections, and my rulings upon

---

[3] Oklahoma Uniform Jury Instructions §§ 1.4, 3.3

these objections, together with the reasons for these objections and rulings are not evidence and should not be considered by you.

The statements, remarks and arguments of the attorneys are intended to help you in understanding the evidence and applying the law, but are not evidence.  If any statement, remark or argument of an attorney has no basis in the evidence, then you should disregard it.

You are the sole judges of the believability of each witness and the value to be given the testimony of each.  You should take into consideration the witness's means of knowledge, strength of memory and opportunities of observation.  Also consider the reasonableness, consistency or inconsistency of the testimony.  You should also consider the bias, prejudice or interest, if any, the witness may have in the outcome of the trial, the conduct of the witness upon the witness stand and all other facts and circumstances that affect the believability of the witness.

My rulings and remarks made during the course of this trial are not intended to indicate my opinion as to the facts.  During all recesses and adjournments, while this case is in progress, you must not discuss this case, or anything about this case, with anyone, and you must not allow anyone to discuss it with you.  This rule applies not only to court employees, the attorneys involved in this case, and others you may meet in the courthouse, but also to your husband and wife, other members of your family, your friends and anyone else you may meet.  If during the trial anyone talks to you or tries to talk to you about this case, you must immediately report it to me, or the [(clerk of the court)/bailiff], who will report to me.

Do not, before this case is finally submitted to you for a decision, talk to your fellow jurors about this case, or anything about this case, or form or express any opinion about it.

[Do not read newspaper reports about this trial, and do not watch or listen to television or radio reports about it.]

The reasons for these rules are that it is essential that you should keep your minds free and open at all times throughout this trial and that you should not be influenced by anything except the evidence you hear and see in the courtroom.

From now on, at the beginning of each recess or adjournment, I will refer to these instructions as "my instructions" or "my usual instructions," but whether or not this is done, you will carefully observe these rules at all times.

INSTRUCTION NO. __ [4]

**PRELIMINARY JURY INSTRUCTION**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

**I.    The Nature of the Action and the Parties**

This case is an action concerning a U.S. patent.  The parties are as follows: Dickson Industries, Inc. is the plaintiff; Patent Enforcement Team, LLC is the defendant, and Midstate Traffic Control, Inc. and Sawhorse Investment, LLC are both third party defendants.

The patent involved in this case relates to a method of forming grooves in the surface of a road.  These grooves can serve to drain rain from the road.  Alternatively or in addition, these grooves act as rumble strips, which generate noise and vibration when the wheels of an automobile pass over them to apprise the driver that the vehicle is either to be slowed down or that the vehicle is not in a proper lane or not in a proper portion of the road.  Again, the patent in this case relates to a method of forming these grooves and not the grooves themselves.

During the trial, the parties will offer testimony to familiarize you with this technology. For your convenience, we will distribute a glossary of some of the technical terms to which the parties may refer during the trial.

The United States Patent and Trademark Office granted has granted a patent to the inventor James Whitney for an invention relating to this technology.  PET is the owner of the patent, which is identified by the Patent Office number 4,701,069.  From time to time, the patent in this case may be referred to by the lawyers and witnesses in this case as the "Whitney Patent"

---

[4] AIPLA's Model Patent Jury Instructions, ¶ I

or it may be referred to by the last three (3) digits of the patent number.  Thus, U.S. Patent No.

4,701,069 may be called the '069 Patent.

INSTRUCTION NO. __[5]

**UNITED STATES PATENTS**

A valid United States patent gives its owner the right to exclude others from making, using, offering to sell, or selling the patented invention or a product made by the patented process within the United States or importing it into the United States.  During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the United States Patent and Trademark Office (sometimes referred to as "the PTO" or "the USPTO").

I will briefly describe some of the terms for you so that you have some background in patent terminology. The Patent and Trademark Office, the PTO, is in the Washington, DC area and is an agency of the Federal Government. It has more than three-thousand technically educated examiners who examine applications for patents.

The application is the initial set of papers filed with the PTO by the applicant.  In addition to some other papers such as the inventors' oath, the application includes a specification, which must have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention.  The specification concludes with one or more numbered sentences.  These are the claims.  The purpose of the claims is to particularly point out what the applicant regards as the invention.  When the patent is eventually issued by the PTO, the claims define the scope of the patent owner's exclusive rights during the life of the patent.  It is my job to decide the meaning of the patent claims.  Before you decide any questions concerning patent infringement, I will tell you the meaning of the claims of the '069 patent.

---

[5] AIPLA's Model Patent Jury Instructions, ¶ I.A

After the applicant files the application, a PTO examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner makes a search of the PTO records for prior art to the patent application claims.  The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.  The prior art is defined by statute and, when the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case.  But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether he has "allowed" any claim.  This writing from the patent examiner is called an "office action."  More often than not, the initial office action by the patent examiner rejects the claims.  The applicant then responds to the office action and sometimes changes the claims or submits new claims. This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history."  This history of written correspondence is contained in a file in the PTO, and consequently some people call this prosecution history the "file history" or the "file wrapper."

# INSTRUCTION NO. __ [6]

# PATENT LITIGATION

Someone is said to be infringing claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the patented invention or a product made by the patented process, as defined by the claims, within the United States before the term of the patent expires.  A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit to stop the alleged infringing acts and recover damages.  The patent owner has the burden to prove infringement of the claims of the patent.  The patent owner also has the burden to prove damages caused by that infringement, which are adequate to compensate for the infringement.  Damages may not be less than a reasonable royalty for the use made of the invention.

A person accused of allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid or unenforceable.  The accused infringer has the burden to prove invalidity by clear and convincing evidence.  In evaluating infringement, each claim is to be evaluated independently.  I will now briefly explain the parties' basic contentions in more detail.

---

[6] AIPLA's Model Patent Jury Instructions, ¶ I.B

INSTRUCTION NO. __

**CONTENTIONS OF THE PARTIES**

*TO BE ADDED FROM FINAL PRETRIAL REPORT*

INSTRUCTION NO. __ [7]

**TRIAL PROCEDURE**

We are about to commence the opening statements in the case.  Before we do that, I want

to explain to you a little bit about the procedures that we will be following during the trial and

the format of the trial.  This trial, like all jury trials, comes in six phases.  We already have been

through the first phase, which is to select you as jurors.  We are now about to begin the second

phase, the opening statements.  The opening statements of the lawyers are statements about what

each side expects the evidence to show.  The opening statements are not evidence in the case.

The evidence comes in the third phase, when the witnesses will take the witness stand

and the documents will be offered and admitted into evidence.  In the third phase, Dickson goes

first in calling witnesses to the witness stand.  These witnesses will be questioned by Dickson's

counsel in what is called direct examination.  After the direct examination of a witness is

completed, the opposing side has an opportunity to cross-examine the witness. After Dickson has

presented its witnesses, PET will call its witnesses, who will also be examined and cross-

examined.  The parties may present the testimony of a witness by reading from their deposition

transcript or playing a videotape of the witness' prior deposition testimony.  A deposition is the

sworn testimony of a witness taken before trial and is entitled to the same consideration as if the

witness had testified at trial.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an

open mind as the evidence comes in. Wait until all the evidence comes in before you make any

decision. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in

what's called "closing argument," which is the fourth phase.  Again, what the lawyers say is not

---

[7] AIPLA's Model Patent Jury Instructions, ¶ III

evidence.  The lawyers' closing arguments to you are for the purpose of helping you in making your decisions.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law.  I have already explained a little bit about the law to you.  But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts.  I will explain to you the rules of law that apply to this case, and I will also explain to you the meaning of the patent claims.  You must follow my explanation of the law and the claims whether you agree with me or not.  Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

# INSTRUCTION NO. __[8]

## EVIDENCE—DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[8]   10th Circuit Pattern Criminal Jury Instructions 1.06

**INSTRUCTION NO. __ [9]**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

---

[9]  9th Circuit Manual of Model Jury Instructions, Instruction 1.5

**INSTRUCTION NO. __**[10]

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

---

[10]   10th Circuit Pattern Criminal Jury Instructions 1.07

# INSTRUCTION NO. __[11]

## CREDIBILITY OF WITNESSES

You are the sole judges of the believability of each witness and the value to be given the testimony of each.  You should take into consideration the witness's means of knowledge, strength of memory and opportunities for observation.  Also consider the reasonableness and consistency or inconsistency of the testimony.

You should also consider the bias, prejudice, or interest, if any, the witness may have in the outcome of the trial, the conduct of the witness upon the witness stand, and all other facts and circumstances that affect the believability of the witness.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

---

[11]   Oklahoma Uniform Jury Instructions 3.13; 9th Circuit Manual of Model Jury Instructions, Instruction 3.6.

**INSTRUCTION NO. __[12]**

**NO TRANSCRIPT AVAILABLE TO JURY**

At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

---

[12]  9th Circuit Manual of Model Jury Instructions, Instruction 1.10

## INSTRUCTION NO. __[13]

### JURY'S DUTIES- CAUTIONARY INSTRUCTIONS- CORPORATION AS PARTY

All parties to a lawsuit are entitled to the same fair and impartial consideration, whether they are corporations or individuals.

---

[13]  Oklahoma Uniform Jury Instructions 1.6

**INSTRUCTION NO. __** [14]

**CAUTIONARY INSTRUCTION - NOTE TAKING BY JURORS**

You may take notes during the presentation of evidence in this case.  In that regard remember this:

1.  Note taking is permitted but is not required.

2.  Take notes sparingly.  Do not try to write down all the testimony.  They will only be used for the purpose of refreshing your memory.  They are helpful when dealing with measurements, times, distances, identities and relationships.

3.  Be brief in your note taking.  You must pass on the credibility of the witnesses, and to do so you must observe them.  Do not let note taking distract you from this duty.

4.  Your notes are for your private use only.  Do not share your notes with any other juror during the presentation of the case.  You may discuss the contents of your notes only after all sides have rested and you have commenced your deliberations.

---

[14]  Oklahoma Uniform Jury Instructions 1.7.

# INSTRUCTION NO. __ [15]

## OUTLINE OF TRIAL

The next phase of the trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

One party will then present evidence, and counsel for the other parties may cross-examine.  Then another party may present evidence, and counsel for the other parties may cross-examine.

After the evidence has been presented, the attorneys will make closing arguments and I will instruct you on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

---

[15]  9th Circuit Manual of Model Jury Instructions, Instruction 1.12

**INSTRUCTION NO. __** [16]

**JURY'S DUTIES- INTRODUCTION TO INSTRUCTIONS**

**TO BE GIVEN AFTER THE EVIDENCE**

It is now my duty to further explain your duties as jurors, and to further inform you of the law applicable to this case.  It is your duty to faithfully perform your duties and to accept and follow all instructions of the law as a whole, including the instruction I gave you at the beginning of this trial and the instructions I gave you during the course of this trial.  You are not free to accept and follow one or more of these instructions and disregard the other.

A written copy of all instructions will be given to you before you begin your deliberations.

---

[16]  Oklahoma Uniform Jury Instructions 1.8

## INSTRUCTION NO. __[17]

## DEPOSITION AS SUBSTANTIVE EVIDENCE

A deposition is the sworn testimony of a witness taken before trial.  The witness is place under oath to tell the truth and the lawyers for each party may ask questions.  The questions are recorded.

The depositions of _____, which were taken on _____, were presented to you during the course of this trial.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

---

[17] 9th Circuit Manual of Model Jury Instructions, Instruction 3.4

## INSTRUCTION NO. __[18]

## EXPERT WITNESS

There has been introduced the testimony of witnesses who are represented to be skilled in certain areas.  Such witnesses are known in law as expert witnesses.  You may consider the testimony of these witnesses and give it such weight as you think it should have, but the value to be given their testimony is for you to determine.  You are not required to surrender your own judgment to that of any person testifying as an expert or otherwise.  The testimony of an expert, like that of any other witness, is to be given such value as you think it is entitled to receive.

---

[18] Oklahoma Uniform Jury Instructions 3.21

**INSTRUCTION NO. __[19]**

**SUMMARIES AND CHARTS NOT RECEIVED IN EVIDENCE**

Certain charts and summaries have been shown to you to help explain the evidence in this case.  Their only purpose is to help explain the evidence. these charts and summaries are not evidence or proof of any facts.

---

[19] 10th Circuit Pattern Criminal Jury Instructions 1.41

**INSTRUCTION NO. __ [20]**

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence and were shown to you to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[20] 9th Circuit Manual of Model Jury Instructions, Instruction 3.10

# INSTRUCTION NO. __ [21]

## BURDEN OF PROOF- GREATER WEIGHT OF THE EVIDENCE

In a civil lawsuit, such as this one, the law provides which party is to prove certain things to you.  This is called "Burden of Proof."

When I say that a party has the burden of proof on any proposition by the greater weight of the evidence, or use the expression "if you find," or "if you decide", I mean you must be persuaded, considering all the evidence in the case, that the proposition on which such party has the burden of proof is more probably true than not true.  The greater weight of the evidence does not mean the greater number of witnesses testifying to a fact, but means what seems to you more convincing and more probably true.

A party who seeks to recover on a claim or counterclaim, or a party who raises an affirmative defense has the burden to prove all the elements of the claim or defense.  In deciding whether a party has met the burden of proof, you are to take into account all the evidence, whether offered by that party or any other party.

---

[21] Oklahoma Uniform Jury Instructions § 3.1

**INSTRUCTION NO. __** [22]

**BURDEN OF PROOF- CLEAR AND CONVINCING EVIDENCE**

When I say that a party has the burden of proving any proposition by clear and convincing evidence, I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable and free from serious doubt.

---

[22] Oklahoma Uniform Jury Instructions § 3.2

**INSTRUCTION NO. __ [23]**

**CLAIM CONSTRUCTION – GENERALLY**

Before you decide whether Dickson, Midstate or Sawhorse has infringed claim 5 of PET's patent or whether claim 5 of PET's patent is invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The only patent claim involved here is claim 5, beginning at column 6, lines 7-17 of the patent, which is exhibit ___ in evidence.

The claims are "word pictures" intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

---

[23] AIPLA's Model Patent Jury Instructions, ¶ 2.0

# INSTRUCTION NO. __[24]

## CLAIM CONSTRUCTION FOR THE CASE

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

- "Road" means that portion of the roadway designed or ordinarily used for travel which does not include the shoulder.

- The step of "moving the rotating cutting cylinder along the road, and simultaneously, moving said cylinder alternately up above the road surface and down into said road surface, to thereby form a plurality of generally parallel grooves in the road" means that the cutting cylinder simultaneously rotates, moves along the road and moves up and down through at least two cuts.

- "A plurality of generally parallel grooves" means grooves which are arranged side by side with their long sides parallel to each other and which are generally oriented transverse to the travel direction of the road.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

---

[24] AIPLA's Model Patent Jury Instructions, ¶ 2.1.

INSTRUCTION NO. __[25]

**INFRINGEMENT – GENERAL**

I will now instruct you as to the rules you must follow when deciding whether PET has proven that Dickson, Midstate and/or Sawhorse infringed any of the claims of the '069 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, PET alleges that the use of Dickson's rumble strip cutting machines infringe claim 5 of PET's '069 patent.

You must compare the accused method to the claims of the '069 patent when making your decision regarding infringement.

A patent may be infringed directly or indirectly. Direct infringement results if the accused method is covered by at least one claim of the patent. Indirect infringement results if the someone induces another to infringe a patent or contributes to the infringement of a patent by another.

---

[25] AIPLA's Model Patent Jury Instructions, ¶ 3.0

# INSTRUCTION NO. __ [26]

## DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT

## OR INTENT TO INFRINGE IS IMMATERIAL

In this case, PET asserts that Midstate and/or Sawhorse have directly infringed PET's patent. Midstate and/or Sawhorse would be liable for directly infringing PET's patent if you find that PET has proven that it is more likely than not that Midstate and/or Sawhorse has made, used, offered to sell, sold or imported[27] the invention defined in claim 5 of PET's patent.

Someone can directly infringe a patent without knowing that what they were doing was an infringement of the patent. They can also infringe even though they believe in good faith that what they were doing was not an infringement of any patent.

---

[26] AIPLA's Model Patent Jury Instructions, ¶ 3.1
[27] 35 U.S.C. § 271(a)

# INSTRUCTION NO. __[28]

## INDUCING PATENT INFRINGEMENT

PET asserts that Dickson and/or Sawhorse have each actively induced Midstate to infringe the patent.  To show induced infringement, PET must prove that it is more likely than not that someone has directly infringed a claim of the '069 patent and that Dickson and/or Sawhorse have actively and knowingly aided and abetted that direct infringement.  PET must show that Dickson and/or Sawhorse actually intended to cause the acts that constitute direct infringement and that Dickson and/or Sawhorse knew or should have known that its actions would induce actual infringement.

The intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement.  The inducer must have specific intent to encourage another's infringement and not merely knowledge of the acts alleged to constitute inducement.  Thus, PET must show that the alleged inducer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.[29]

It is not necessary to show that Dickson and/or Sawhorse has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, Dickson and/or Sawhorse have not induced infringement.  If Dickson and/or Sawhorse provided instructions and directions to perform the infringing act through labels, advertising, or other sales methods or by supplying the components used in an infringing product or method with the knowledge and intent that its customer would use the components to make, use, or sell the patented invention, this may be evidence of inducement to infringe.

---

[28] AIPLA's Model Patent Jury Instructions, ¶ 3.1.
[29] *DSU Medical Corp., v. JMS Co., Ltd*., 2006 WL 3615056, * 9 (Fed. Cir. 2006) (en banc.), *citing MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 420 F.3d 1369, 1378 (Fed. Cir. 2005).

# INSTRUCTION NO. __ [30]

## DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

To determine literal infringement, you must compare the accused method with claim 5 that PET asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Midstate's rumble strip cutting process includes each and every method step in that patent claim.  If Midstate's method does not contain one or more method steps recited in the claim, then Midstate does not literally infringe that claim.

The accused method should be compared to the invention described in each patent claim it is alleged to infringe, not PET's preferred or commercial embodiment of the claimed invention.

The same method step of the accused method may satisfy more than one element of a claim.

---

[30] AIPLA's Model Patent Jury Instructions, ¶ 3.4

# INSTRUCTION NO. __[31]

## INFRINGEMENT OF OPEN ENDED CLAIMS

The preamble to claim 5 uses the phrase " A method of forming a plurality of grooves in the surface of a road, the method including the steps of."  The word "including" means "including the following but not excluding others."

If you find that the accused method includes all of the elements in claim 5, the fact that the accused method might include additional method steps would not avoid literal infringement of a claim that uses "including" language.

---

[31] AIPLA's Model Patent Jury Instructions, ¶ 3.7

INSTRUCTION NO. __[32]

**DIRECT INFRINGEMENT – INFRINGEMENT UNDER**

**THE DOCTRINE OF EQUIVALENTS**

If you decide that the accused method does not literally infringe claim 5, you must then decide whether that method infringes claim 5 under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the method can infringe the asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the product or method is missing an identical or equivalent part or step to even one part or step of the asserted patent claim, the method cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the method has an identical or equivalent part or step to that individual claim requirement.

A part or step of a method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a part or step of the method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement.  The known interchangeability between the claim requirement and the part

---

[32] AIPLA's Model Patent Jury Instructions, ¶ 3.8

or step of the product or method is not necessary to find infringement under the doctrine of equivalents.  The same element or method step of the accused method may satisfy more than one element of a claim.

# INSTRUCTION NO. __[33]

## WILLFUL INFRINGEMENT

You are instructed that where a potential infringer has actual notice of another's patent rights, he has an affirmative duty to take due care not to infringe a valid and enforceable patent claim.  Thus, if you find by a preponderance of the evidence that Midstate, Sawhorse and/or Dickson infringed claim 5 of the '069 patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement by that particular company was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.      Midstate, Sawhorse and/or Dickson had actual knowledge of PET's patent, and

2.      Midstate, Sawhorse and/or Dickson had no reasonable basis for believing (a) that the accused method did not infringe claim 5 of PET's patent or (b) that PET's patent was invalid or unenforceable.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Midstate, Sawhorse and/or Dickson intentionally copied the claimed invention, whether Midstate, Sawhorse and/or Dickson exercised due care to avoid infringing each patent, and whether Midstate, Sawhorse and/or Dickson presented a substantial defense to infringement, including the defense that the infringed patent is not infringed, invalid or unenforceable.

---

[33] AIPLA's Model Patent Jury Instructions, ¶ 13

INSTRUCTION NO. __[34]

**SUMMARY OF INVALIDITY DEFENSE**

Dickson contends that claim 5 of the patent-in-suit is invalid.  Dickson has the burden of proving by clear and convincing evidence that claim 5 is invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether claim 5 is invalid.

Dickson contends that the asserted patent claim is invalid as being anticipated or obvious based on certain prior art.  Dickson also contends that that the asserted patent claim is invalid for failing to enable one skilled in the art to practice the method of claim 5 and for failing to include an adequate written description of the method of claim 5.

I will now instruct you in more detail why Dickson alleges that the asserted claim of the '069 patent is invalid.

---

[34] AIPLA's Model Patent Jury Instructions, ¶ 4

# INSTRUCTION NO. __ [35]

## PRIOR ART DEFINED

Prior art includes any of the following items received into evidence during trial:

1. any product or method that was publicly known or used by others in the United States before the patented inventions were made;

2. patents that issued more than one year before the filing date of the patent or before the invention of claim 5 was made;

3. publications having a date more than one year before the filing date of the patent or before the invention of claim 5 were made;

4. any product or method that was in public use or on sale in the United States more than one year before the patent was filed;

5. any product or method that was made by anyone before the named inventor created the patented method where the method was not abandoned, suppressed, or concealed.

In this case, Dickson contends that the following items are prior art: the Shed Slot Cutting Operation of the Modified Target Saw, the Shed Cleaning Operation of the Modified Target Saw, and the 1976 California Report.

---

[35] AIPLA's Model Patent Jury Instructions, ¶ 5

INSTRUCTION NO. __[36]

## ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, Dickson must present clear and convincing evidence showing that the claimed invention is not new.

In this case, Dickson contends that claim 5 of the '069 patent is anticipated.  First, Dickson contends that the method of claim 5 of the '069 patent was performed before December 10, 1985 in the Shed Slot Cutting Operation of the Modified Target Saw.  Second, Dickson contends that the method of claim 5 of the '069 patent was performed before December 10, 1985 in the Shed Cleaning Operation of the Modified Target Saw.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in each of the alleged prior uses, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular prior use.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that Dickson contends apply in this case.  I will now instruct you about those.

---

[36] AIPLA's Model Patent Jury Instructions, ¶ 6; 35 U.S.C. 102.

INSTRUCTION NO. __[37]

**PRIOR PUBLIC USE**

Dickson contends that claim 5 of the '069 patent was anticipated because the invention defined in that claim was publicly used in the United States more than one year before Mr. Whitney filed his U.S. patent application on December 10, 1986.

You are instructed that the invention defined by claim 5 of the '069 patent was invented on December 10, 1986.  A patent claim is invalid if the invention defined by that claim was publicly used by anyone in the United States more than one year before Mr. Whitney filed his patent application, that is before December 10, 1985.  An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  Secret use by a third party is not an invalidating public use.  If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.

---

[37] AIPLA's Model Patent Jury Instructions, ¶ 6.2; 35 U.S.C. 102.

INSTRUCTION NO. __[38]

### *Graham v. John Deere* TEST

Dickson contends that claim 5 of the '069 patent is invalid because the claimed subject matter would have been obvious to one of ordinary skill in the art at the time the invention was made. Dickson bears the burden of proving this defense by clear and convincing evidence.

To find anticipation, it is required that every one of the elements of the claimed invention be found in a single item of prior art; however, for obviousness, a person of ordinary skill in the art may combine two or more items of prior art. Therefore, you must consider the prior art reference(s) and evaluate obviousness from the perspective of one of ordinary skill in the art at the time the invention was filed (not from the perspective of a layman or a genius in the art).

Before determining whether or not Dickson has established obviousness of the claimed invention, you must determine the following factual matters, each of which must be established by clear and convincing evidence:

1. The scope and content of the prior art relied upon by Dickson;

2. The difference or differences, if any, between each claim of the '069 patent and the prior art; and

3. The level of ordinary skill in the art at the time the invention of the '069 patent was made.

4. Objective factors indicating non-obviousness, including failure of others, commercial success, long felt need, unexpected results, acceptance of licenses.

Against this background of facts, you will then make your conclusion whether or not the claimed subject matter would have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

---

[38] AIPLA's Model Patent Jury Instructions, ¶ 7.0; 35 U.S.C. 103.

**INSTRUCTION NO. __[39]**

**SCOPE AND CONTENT OF THE PRIOR ART**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.  The prior art includes the following items received into evidence during the trial: the Shed Slot Cutting Operation of the Modified Target Saw, the Shed Cleaning Operation of the Modified Target Saw  and the 1976 CA Report.

---

[39] AIPLA's Model Patent Jury Instructions, ¶ 7.1

# INSTRUCTION NO. __[40]

## ANALOGOUS ART

PET and Dickson disagree as to whether the Shed Slot Cutting Operation and the Shed Cleaning Operation is analogous prior art.

An item of prior art is analogous if it comes from the same field in which the patentee was working, even if it does not concern the problem the patentee was addressing.  An item of prior art is also analogous even if it was not from the same field in which the patentee was working, so long as it was reasonably pertinent to the particular problem that the patentee was trying to solve.

If you determine that the Shed Slot Cutting Operation and the Shed Cleaning Operation is not analogous art, then you should ignore it in deciding whether the claimed invention would have been obvious.

---

[40] AIPLA's Model Patent Jury Instructions, ¶ 7.2

# INSTRUCTION NO. __[41]

## DIFFERENCES OVER THE PRIOR ART

In reaching your conclusion as to whether or not the claimed invention would have been obvious, you should consider any difference or differences between the prior art and the claimed invention.  When doing so, each claim must be considered in its entirety and separately from the other claims.

Although you should consider any differences between the claimed invention and the prior art, you must still determine the obviousness or nonobviousness of the entirety of the invention, not merely some portion of it.

---

[41] AIPLA's Model Patent Jury Instructions, ¶ 7.3

## JOINT INSTRUCTION NO. __ [42]

## LEVEL OF ORDINARY SKILL

In reaching your determination as to whether or not the claimed invention would have been obvious, you should consider the level of ordinary skill in the pertinent art.  When determining the level of ordinary skill in the art, you should consider all the evidence submitted by PET and Dickson to show:

1.  the level of education and experience of persons actively working in the field at the time of the invention;

2.  the types of problems encountered in the art at the time of the invention;

3.  the prior art patents and publications;

4.  the activities of others;

5.  prior art solutions to the problems; and

6.  the sophistication of the technology.

PET contends that the level of ordinary skill in the pertinent art field was _____. Dickson contends that the level of ordinary skill in the pertinent art field was _____. Based on the factors listed and the evidence presented, you must determine the level of ordinary skill in the art at the time of the invention.

When you decide the issue of obviousness, you must decide whether or not the invention would have been obvious to one having this ordinary level of skill in the pertinent art field.

---

[42] AIPLA's Model Patent Jury Instructions, 7.4

## JOINT INSTRUCTION NO. __ [43]

### OBVIOUSNESS DECISION

In determining whether the invention of the '069 patent would have been obvious to a person of ordinary skill in the art, you must presume that person would have known about all relevant prior art.

There must be some reason for combining prior art references or modifying a prior art references to arrive at the claimed invention.  This need can arise from an explicit teaching in the art or from any need or problem known in the field of endeavor at the time of the patent and addressed by the patent can provide a reason for combining the elements in the manner claimed.[44]

You must not use hindsight in determining whether a claimed invention would have been obvious or not.  In other words, it is wrong to use the '069 patent as a guide through the prior art references, combining the right references in the right way so as to achieve the result of the claims of the '069 patent.  Rather, you must consider only the thinking of one of ordinary skill in the art with knowledge of all the prior art at the time of the invention.  When the prior art teaches away from combining known elements, the discovery of a successful way of combining such elements is more likely to be nonobvious.

---

[43] AIPLA's Model Patent Jury Instructions, ¶ 7.5
[44] *KSR Int'l Co. v. Teleflex Inc.*, 2007 LEXIS 4745 (2007)

# INSTRUCTION NO. __ [45]

## FACTORS INDICATING NONOBVIOUSNESS

Before deciding the issue of obviousness, you must consider certain factors which, if established, weigh in favor of finding that the invention would not have been obvious. No factor alone is dispositive, and you must considered the obviousness or nonobviousness of the invention as a whole.

**Commercial Success**

One of the factors you should consider is whether PET has shown any commercial success of products covered by the '069 patent due to the merits of the invention. To prove this, PET would have to provide evidence to satisfy you that there is a causal connection between the commercial success of the products and the claimed invention, which would tend to indicate that the invention would not have been obvious.

However, if you conclude that commercial success of the product is due to advertising, promotion, salesmanship or the like, or to features of the product other than those claimed in the patent in suit, rather than to the claimed invention, then the fact that the product enjoyed commercial success is not related to whether the invention would have been nonobvious.

**Long-Felt Need**

One of the factors you should consider is whether or not PET has shown a long felt need in the art which was satisfied by the invention of the '069 patent, which would tend to indicate that the invention would not have been obvious. However, if you were to conclude that there was no long-felt need in the pertinent art field or that the long-felt need was satisfied due to advances in unrelated technology, then PET would not have carried its burden of proof on this factor.

---

[45] AIPLA's Model Patent Jury Instructions, ¶ 7.7

**Failure of Others**

One of the factors you should consider is whether PET has shown that others had tried, but failed to solve the problem solved by the invention of the '069 patent, which would tend to indicate that the invention would not have been obvious.  To prove this, PET must show that it was the merits of the invention that allowed the inventors of the '069 patent to succeed.  If advances in unrelated technology allowed the inventor to succeed, then PET would not have carried his burden of proof on this factor.

**Copying**

One of the factors you should consider is whether or not [the Plaintiff] has shown copying by others of the invention claimed in the [abbreviated patent number] patent.  If you were to find that others copied the invention because of its merits, this would tend to indicate that the invention would not have been obvious.

**Unexpected Results**

One of the factors you should consider is whether or not PET has shown unexpected superior results achieved by the invention claimed in the '069 patent.  To prove this, PET must show that it was the patented invention that caused the unexpected results, which would tend to indicate that the invention would not have been obvious.  If there were not unexpected superior results or if the unexpected results were due to a feature unrelated to the invention, then PET would not have carried its burden of proof on this factor.

**Acceptance of Licenses**

One of the factors you should consider is whether or not PET has shown that others have accepted licenses under '069 patent because of the merits of the claimed invention.  If you were to find that others took licenses as a result of the merits of the claimed invention, this would tend

to indicate that the invention would not have been obvious.

# INSTRUCTION NO. __ [46]

## ENABLEMENT

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the claimed invention. This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention.  In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.  Dickson bears the burden of establishing lack of enablement by clear and convincing evidence.

Dickson contends that claim 5 of the '069 patent is invalid for lack of enablement.  The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

---

[46] AIPLA's Model Patent Jury Instructions, ¶ 8

**INSTRUCTION NO. __** [47]

**WRITTEN DESCRIPTION REQUIREMENT**

A patent must contain a written description of the method claimed in the patent.  To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.  The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention as finally claimed in the patent.

Dickson contends that claim 5 of the '069 patent is invalid for failure to satisfy the written description requirement.  Dickson bears the burden of establishing lack of written description by clear and convincing evidence.  If you find that Dickson has proved that it is highly probable that the '069 patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

---

[47] AIPLA's Model Patent Jury Instructions, ¶ 9

INSTRUCTION NO. __ [48]

**INEQUITABLE CONDUCT - GENERALLY**

Dickson contends that PET may not enforce the '069 patent against Dickson, Midstate and/or Sawhorse because the inventor James Whitney engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the '069 patent. "Inequitable conduct" refers to the intentional failure to meet a duty of candor and good faith. To prove inequitable conduct occurred, Dickson must prove that it is highly probable that the patent applicant or the applicant's attorney or representative, intentionally withheld or misrepresented information with an intent to mislead or deceive the Patent & Trademark Office. Applicants are required to prosecute patent applications with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all attorneys and agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. Each individual with such a duty must disclose all information known to that individual to be material. Dickson asserts that James Whitney obtained the '069 patent through inequitable conduct.

Specifically, Dickson contends that Mr. Whitney failed to disclose to the PTO certain alleged prior art that he was aware of: (a) a slot cutting machine in operation, and (b) resulting grooves from an unknown rumble strip cutting process.

Dickson bears the burden of establishing inequitable conduct by clear and convincing evidence. To determine whether the '069 patent was obtained through inequitable conduct, you must determine that James Whitney, his or her representative, or someone involved in a substantial way with the prosecution of the application withheld or misrepresented information

---

[48] AIPLA's Model Patent Jury Instructions, ¶ 11

that was material to the examination of the patent application, and that this individual or

individuals acted with an intent to deceive or mislead the PTO.

INSTRUCTION NO. __ [49]

**MATERIALITY**

Dickson contends that the Shed Slot Cutting Process in Kentucky and the grooves he saw in Florida was material information known to the applicant, the applicant's representative, or someone else involved in a substantial way in the prosecution of the application and was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '069 patent.  If you find that the applicant, the applicant's representative, or other individuals involved in some substantial way with the prosecution of the application withheld or misrepresented information when applying for the '069 patent, you must determine whether that information was material.

Prior to 1992, information was considered material if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether or not to allow the application to issue as a patent.  Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

---

[49] AIPLA's Model Patent Jury Instructions, ¶ 11.1

INSTRUCTION NO. __[50]

**INTENT TO DECEIVE OR MISLEAD**

Dickson contends that the Shed Slot Cutting Process in Kentucky and the grooves he saw in Florida was material information that was withheld or misrepresented to the PTO during the prosecution of the '069 patent with the intent to deceive or mislead the PTO.  If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO.  Intent to deceive the PTO may be found from direct evidence.  Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.  In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

---

[50] AIPLA's Model Patent Jury Instructions, ¶ 11.2

## INSTRUCTION NO. __ [51]

## BALANCING OF MATERIALITY AND INTENT

If you determine that Dickson has proven by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the PTO, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '069 patent. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less.

---

[51] AIPLA's Model Patent Jury Instructions, ¶ 11.3

**INSTRUCTION NO. __ [52]**

**DAMAGES – GENERALLY**

If you find that the accused method infringes claim 5 of the '069 patent at issue in this case, you must determine the amount of damages to be awarded PET for the infringement. On the other hand, if you find that claim 5 is either invalid or is not infringed, then you need not address damages in your deliberations. The amount of those damages must be adequate to compensate PET for the infringement. Your damage award should put PET in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You must consider the amount of injury suffered by PET without regard to Dickson, Midstate or Sawhorse's gain or losses from the infringement. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

PET has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of PET.

---

[52] AIPLA's Model Patent Jury Instructions, ¶ 12.0

## INSTRUCTION NO. __[53]

### JURY'S DUTIES- TO BE GIVEN PRIOR TO DELIBERATION

Ladies and Gentlemen of the jury, that completes the argument.  This case is now submitted to you for your decision and verdict.

When you have arrived in the jury room you should first choose one of the jury as a foreperson and then begin deciding the case.  You must not use any method of chance in arriving at your verdict, but rest it on the opinion of each juror who agrees with it.  The forms of all possible verdicts will be sent to the jury room with you, along with these written instructions of the Court.  If all twelve (12) of you agree on a verdict, select the one (1) correct form of verdict and only your foreperson alone need sign it; if you do not all agree, but at least nine (9) or more of you do, then only those nine (9) or more agreeing will each, individually, sign the verdict form.  Notify the Bailiff when you have arrived at a verdict so that you may return it in open court.

---

[53]  Oklahoma Uniform Jury Instructions 1.9

INSTRUCTION NO. __[54]

**NOTE TAKING BY JURORS - TO BE GIVEN PRIOR TO DELIBERATION**

You have been permitted to take notes during the testimony of this case.  If you have done so you may refer to them during deliberations, and discuss the contents of your notes with other jurors.  In your deliberations, give no more or no less weight to the views of a fellow juror just because that juror did or did not take notes.  your notes are not official transcripts, but are simply aids to your memory.  It is the testimony from the witness stand which must be the basis of your determination of the facts, and ultimately, your verdict in the case.

---

[54]  Oklahoma Uniform Jury Instructions 1.10

**INSTRUCTION NO. __ [55]**

**COMMUNICATION WITH COURT**

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to [the marshal] [the bailiff] [my law clerk], who will bring it to my attention.  I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial and sentencing proceedings, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

---

[55] 10th Circuit Pattern Criminal Jury Instructions 1.43

**INSTRUCTION NO. __** [56]

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

---

[56] 9th Circuit Manual of Model Jury Instructions, Instruction 4.4

INSTRUCTION NO. __[57]

**REASONABLE ROYALTY**

The patent law specifically provides that the amount of damages that each infringer must pay PET for infringing PET's patents may not be less than a reasonable royalty for the use that infringer made of PET's inventions.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

The objective of the reasonable royalty calculation is to determine the amount necessary to adequately compensate for an infringement.  PET presented the testimony of a damage expert. You may award damages that are greater than or less than the amounts presented by these experts, so long as the award is not less than a reasonable royalty.

---

[57] AIPLA's Model Patent Jury Instructions, ¶ 12.13

**INSTRUCTION NO.\_\_\_** [58]

**REASONABLY ROYALTY - DEFINITION**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a person or company in the position of Dickson, Midstate and/or Sawhorse taking place just before the infringement began.  You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

---

[58] AIPLA's Model Patent Jury Instructions, ¶ 12.14

INSTRUCTION NO. ___ [59]

**REASONABLE ROYALTY – RELEVANT FACTORS**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.      Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.      The rates paid by Dickson, Midstate and/or Sawhorse to license other patents comparable to the '069 patents.

3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.      The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.      The duration of the '069 patent and the term of the license.

8.      The established profitability of the product made under the '069 patent; its commercial success; and its current popularity.

---

[59] AIPLA's Model Patent Jury Instructions, ¶ 12.15

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.     The extent to which the Dickson, Midstate and/or Sawhorse have made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such as Dickson, Midstate and/or Sawhorse) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

In considering these factors, please keep the following in mind.  A reasonable royalty under the circumstances is not, however, the equivalent of ordinary royalty negotiations among truly "willing" patent owners and licenses, because that would ignore the infringement of the patent owner's property right and its right to exclude others from using the patent.  Also, if the infringer could expect, after having been found liable in a lawsuit, to pay only what he would have paid if he had taken a license in the first place, there would be no incentive not to infringe.  Thus, a "reasonable royalty" for these purposes may be greater than what the parties may actually have agreed to if they had entered into a license agreement.

**INSTRUCTION NO.\_\_\_ [60]**

**REASONABLE ROYALTY - TIMING**

Although the relevant date for the hypothetical reasonable royalty negotiation is just
before the infringement began, you may consider in your determination of reasonable royalty
damages, any actual profits from the use of the invention by Dickson, Midstate and/or Sawhorse
after that time and any commercial success of the patented invention in the form of sales of the
patented or infringing products after that time.  You may only consider this information,
however, if it was foreseeable at the time that the infringement began.

---

[60] AIPLA's Model Patent Jury Instructions, ¶ 12.16

INSTRUCTION NO. ___ [61]

**TORTIOUS INTERFERENCE WITH A BUSINESS RELATION - ELEMENTS**

Dickson claims that it had a contract with Midstate.  Dickson also claims that PET intentionally and wrongfully interfered with this contract, and that it suffered damages as a direct result.  In order to win on the claim of tortious interference with a business relationship, Dickson must show by the weight of the evidence that:

1. Dickson had a contract with Midstate;

2. PET interfered with the business relation;

3. PET's actions were malicious and wrongful;

4. PET's actions were not justified, privileged or excusable;

5. Dickson suffered damages as a direct result of PET's actions.

If Dickson demonstrates each of these elements by the weight of the evidence, it will have established that PET tortiously interfered with Dickson's business relations.  On the other hand, if Dickson fails to prove by the weight of the evidence one or more of these elements, then you must find that PET did not tortiously interfere with Dickson's business relations.

---

[61] Oklahoma Uniform Jury Instructions 24.1; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1096 (Okla. 1996); *Morrow Development Corp. v. American Bank & Trust Co.*, 875 P.2d 411 (Okla.1994); *Navistar Int'l Transportation Co., v. Vernon Klein Truck & Equip.*, 919 P.2d 443, 447 (Okla. Ct. App. 1994)

INSTRUCTION NO.___ [62]

**MALICE - DEFINITION**

Actions are malicious if it intentionally performed and the sole or primary purpose

behind the act was to harm another.

---

[62] Oklahoma Uniform Jury Instructions 24.1; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1096 (Okla. 1996); *Morrow Development Corp. v. American Bank & Trust Co.*, 875 P.2d 411 (Okla.1994); *Navistar Int'l Transportation Co., v. Vernon Klein Truck & Equip.*, 919 P.2d 443, 447 (Okla. Ct. App. 1994)

# INSTRUCTION NO.___ [63]

## PRIVILEGE - DEFINITION

Though they may interfere with a business relation, actions are privileged if the actor believes that his interests may otherwise be harmed by the performance of the contract or transaction. It is not unlawful to interfere with the business relations of another if it is done by fair means, if it is accompanied by honest intent, and if it is done to better one's own business and not to principally harm another.

The honest assertion of a lawful business action would be otherwise privileged.

---

[63] Oklahoma Uniform Jury Instructions 24.1; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1096 (Okla. 1996); *Morrow Development Corp. v. American Bank & Trust Co.*, 875 P.2d 411 (Okla.1994); *Navistar Int'l Transportation Co., v. Vernon Klein Truck & Equip.*, 919 P.2d 443, 447 (Okla. Ct. App. 1994); Del. State Bank v. Salmon, Okl., 548 P.2d 1024 (Okla. 1976); RESTATEMENT (SECOND) OF TORTS 773 (1977).

**INSTRUCTION NO.___** [64]

**INTERFERENCE WITH CONTRACT- DAMAGES**

If you decide for Dickson, you must then fix the amount of its damages.  This is the amount of money that will reasonably and fairly compensate it for the losses it has sustained from the interference with its business relations.

---

[64] Oklahoma Uniform Jury Instructions 24.3

**INSTRUCTION NO.___ [65]**

**MANDATORY INSTRUCTION UPON DISCHARGE**

You have now completed your duties as jurors in this case and are discharged.  The

question may arise whether you are free to discuss this case with anyone.  This is entirely your

decision.  If any person tries to discuss the case over your objection, or becomes critical of your

service, please report it to me immediately.

---

[65] Oklahoma Uniform Jury Instructions 1.11

# GLOSSARY OF PATENT TERMS[66]

Application – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

Claims – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

File wrapper – See "prosecution history" below.

License – Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.

Office action – Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

Ordinary skill in the art – The level of experience, education, and/or training that those individuals who work in the area of the invention possess.

Patent Examiners – Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention.

Prior art – Knowledge that is available to the public either prior to the invention by applicant or more than one-year prior to the filing date of the application.

Prosecution history – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file wrapper" of the patent during the course of this trial.

References – Any item of prior art used to determine patentability.

---

[66] AIPLA's Model Patent Jury Instructions

<u>Specification</u> – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention.

Dated this 15th DAY of JUNE 2007.

Respectfully submitted,

Joseph W. Bain
Jerold I. Schneider
Mark M. Zylka
AKERMAN SENTERFITT
222 Lakeview Avenue, 4th Floor
West Palm Beach, FL 33401-6183
Telephone: (561) 653-5000
Facsimile:  (561) 659-6313

s/Micheal Salem
**MICHEAL SALEM**   OBA #7876
*Salem Law Offices*
111 North Peters, Suite 100
Norman, Oklahoma  73069-7235
(405) 366-1234
(405) 366-8329  TELEFAX

Attorneys for Defendant
PATENT ENFORCEMENT TEAM, LLC

## CERTIFICATE OF SERVICE

**I hereby certify** that I electronically transmitted this document to the Clerk of the United States District Court for the Western District of Oklahoma using the ECF System for filing and transmittal of notice of electronic filing to the following ECF registrants:

**John A. Kenney, Esq.**
**Michael D. McClintock, Esq.**
McAfee & Taft PC
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103

**David A. Cheek**
Cheek & Gelnar, P.L.L.C.
6301 Waterford Blvd., Suite 320
Oklahoma City, OK 73118-1157

this 15th DAY of JUNE 2007.

s/Micheal Salem
**MICHEAL SALEM**