IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DICKSON INDUSTRIES, INC**., <br> an Oklahoma corporation, <br><br> Plaintiff, <br><br> vs. <br><br> **PATENT ENFORCEMENT TEAM, L.L.C.**, <br> a Florida limited liability company, <br><br> Defendant, <br><br> vs. <br><br> **MIDSTATE TRAFFIC CONTROLS, INC**., <br> an Oklahoma corporation, <br><br> and <br><br> **SAWHORSE INVESTMENTS, L.L.C.**, <br> an Oklahoma limited liability company, <br><br> Third-party defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **CASE NO. CIV-02-467-HE** |

**DEFENDANT PATENT ENFORCEMENT TEAM, LLC'S RESPONSE TO
THE TRIAL BRIEF OF PLAINTIFF DICKSON INDUSTRIES, INC.**

Defendant Patent Enforcement Team, LLC ("PET") files this response to oppose certain points raised in Plaintiff Dickson Industries, Inc.'s ("Dickson") trial brief.

**I.   THE DOCTRINE OF EQUIVALENTS IS FULLY AVAILABLE TO PET**

Dickson uses its brief to argue that the doctrine of equivalents is not available in this case as a matter of law.  Dickson bases it position solely on *Planet Bingo, LLC v. Gametech Int'l, Inc.*, 472 F.3d 1338 (Fed. Cir. 2006).

Dickson's position is a rehash of its "vitiation" argument presented in its first motion for partial summary judgment—which the Court has denied. As PET previously noted in its response, the *Planet Bingo* case and the concept of "vitiation" are inapposite to the present case. Vitiation is used to foil attempts to recapture scope that was surrendered during prosecution or to cover the antithesis of a claimed feature. The present case does not involve such circumstances.

First, there was no surrender during prosecution. Claim 5 was never amended and it was never argued during prosecution that claim 5 does not cover cuts in a shoulder—for any reason, much less for reasons of patentability. Further, it is important to note that claim 5 was allowed by the USPTO without amendment to any recitation of the term "road" in claim 5. The entire prosecution history of the '069 patent, including the reexamination history, is devoid of any comments or arguments that would narrow the range of equivalents in connection with claim 5. Once again, Dickson has not and cannot point to any such disclaimer of scope in the entire prosecution history of the '069 patent. Therefore, PET should enjoy a broad range of equivalents for claim 5.

Within the four corners of the '069 patent and its file history, there is no manifest disavowal of the shoulder from the scope of claim 5. Dickson has not and cannot point to any such disclaimer of scope. Indeed, the abstract of the '069 patent states: "An apparatus and method for cutting rain drainage grooves in a road surface, **such as** at the edges of the road to form a road marker system." Moreover, the '069 patent notes that "the method/apparatus of the present invention is useful for forming grooves in **any** surface portion of a road, including a raised portion." Thus, there can be no doubt that the patentee disclosed to the world in his patent that his method has application beyond just the road surfaces illustrated in the patent as examples.

The present case is not one in which PET is trying to stretch claim 5 beyond the road environment to cover things such as airport runways, pedestrian sidewalks or concrete foundations of a building. Such expansion of equivalents may reach the limit of the doctrine, but none of those paved environments are at issue here. In stark contract, the surface characterized as being equivalent in this case is another portion of a **road**!

Again, the shoulder of a road cannot reasonably be characterized as being the antithesis of a road, because it is clearly part of a road. In fact, the shoulder is one example of a road surface, albeit one that the Court found was not <u>literally</u> covered by the claim. However, as noted above, the patentee obviously contemplated other applications by virtue of the expansive statement at end of the '069 specification. Such application of the doctrine cannot be regarded as vitiating the term "road," and the appropriateness of the doctrine of equivalents is apparent.

In effect, Dickson continues to assert—despite the denial of its motion for partial summary judgment—that a <u>literal</u> claim construction prevents application of the doctrine of equivalents. If such were the standard, there would be no such thing as the doctrine of equivalents.

Dickson makes much of the fact that the term "road" is repeated throughout claim 5. However, there is no legal authority to support a contention that the number of times a term is used has any bearing on whether that claim feature is vitiated.

## II.   OPINION OF COUNSEL

With respect to *Knorr-Bremse Systeme Fuer Intzfahrzeuge GmbH v. Dana Corp.*, Dickson overstates the holding of the case. It goes too far to say that *Knorr-Bremse* rendered any evidence of failure to obtain the opinion of counsel is inadmissible. Rather, the case simply

holds that no adverse inference can be drawn from such inaction.  PET submits that Dickson's concern over an adverse inference can easily be addressed by a jury instruction.

The Federal Circuit expressly declined to decide the question of whether a jury "can or should be told whether or not counsel was consulted (albeit without any inference as to the nature of the advice received) as part of the totality of the circumstances relevant to the question of willful infringement." *Knorr-Bremse* at 1346-47.  PET submits that Dickson's failure to obtain or produce the opinion of counsel on the issue of infringement is admissible and should be considered by the jury -- without an adverse inference – in its consideration of the totality of the circumstances and for other reasons.

### III.   MALICIOUSNESS

Oklahoma law – even the case law cited by Dickson -- is clear that tortious interference with business relations under Oklahoma law requires the principal motive behind the alleged tort to be harm of another.  In *Morrow Development Corp. v. American Bank & Trust Co.*, the Oklahoma Supreme Court noted that, among other things, a claim of tortious interference requires, among other things, proof that "the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excused." *Morrow Development Corp. v. American Bank & Trust Co.*, 875 P.2d 411, 416 (Okla.1994).  In discussing this element, the Oklahoma Supreme Court noted that it has held that "it is not unlawful for one to 'interfere with the contractual relations of another if [this is done] by fair means, if [it is] accompanied by honest intent, and if [it is done] to better one's own business **and not to principally harm another**." *Id*. at n. 21 (emphasis adde*d*) *citing Del. State Bank v. Salmon, Okl.*, 548 P.2d 1024, 1027 (1976); *see also Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1096 (Okla. 1996);

PET expects that there will be no evidence in the record to support this element of Dickson's tortious interference claim, particularly considering the vast case law that make clear that PET's actions were justified, privileged and/or excused. A patent holder has the right to assert patent infringement and demand licenses and bring actions if those fees are not paid. *See, e.g., Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709, (Fed. Cir. 1992) (a patent holder "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"); *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985) (holding that a patent holder "did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit").

## IV.  OBVIOUSNESS

To Dickson's citations from *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (2007), PET would add the following. First, while the purpose for modifying the prior art cannot be limited to the purpose of the patentee, the Supreme Court left intact the need for **some reason** for combining prior art references or modifying a prior art references to arrive at the claimed invention. *Id.* at 1741. Second, *KSR* clarified that this need can arise from more than just an **explicit** teaching in the art; rather, any need or problem known in the field of endeavor at the time of the patent that is addressed by the patent can provide a reason for combining the elements in the manner claimed. *Id.* at 1742.

Dickson must still demonstrate **some reason** for combining or further modifying the asserted prior art processes. Perhaps most significant to the present case, the Supreme Court also reaffirmed the long established principle that when the prior art teaches away from a combination of known elements, the discovery of a successful way of combining such elements is more likely to be nonobvious. *Id.* at 17439-40 (*citing United States v. Adams*, 383 U.S. 39 (1966)). Thus, whatever combination or modification that Dickson asserts, it must demonstrate that such alleged combination or modification is not contrary to the teachings of the very prior art processes it is attempting to modify or combine.

Finally, *KSR* clearly does not relieve Dickson of its obligation to prove that whatever combination or modification is asserts actually meets all the requirements of claim 5.

## V.  CONCLUSION

In light of the above, the cases cited by Dickson are inapposite or do not pertain to the facts of this case.

Dated this 12th DAY of JULY 2007.

          Respectfully submitted,

          Joseph W. Bain
          Jerold I. Schneider
          Mark M. Zylka
          AKERMAN SENTERFITT
          222 Lakeview Avenue, 4th Floor
          West Palm Beach, FL 33401-6183
          Telephone: (561) 653-5000
          Facsimile: (561) 659-6313

          s/Micheal Salem
          **MICHEAL SALEM**   OBA #7876
          *Salem Law Offices*
          111 North Peters, Suite 100
          Norman, Oklahoma  73069-7235
          (405) 366-1234
          (405) 366-8329  TELEFAX

          *Attorneys for Defendant*
          *PATENT ENFORCEMENT TEAM, LLC*

## CERTIFICATE OF SERVICE

**I hereby certify** that I electronically transmitted this document to the Clerk of the United States District Court for the Western District of Oklahoma using the ECF System for filing and transmittal of notice of electronic filing to the following ECF registrants:

**John A. Kenney, Esq.**
**Michael D. McClintock, Esq.**
McAfee & Taft PC
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103

**David A. Cheek**
Cheek & Gelnar, P.L.L.C.
6301 Waterford Blvd., Suite 320
Oklahoma City, OK 73118-1157

this 12th DAY of JULY 2007.

                                              s/Micheal Salem
                                              **MICHEAL SALEM**