## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DICKSON INDUSTRIES, INC.,    )
                                     )
              Plaintiff,       )
                                     )
vs.                                )     NO.  CIV-02-0467-HE
                                     )
PATENT ENFORCEMENT TEAM,    )
LLC, ET AL.,                     )
                                     )
            Defendants.    )

## COURT'S INSTRUCTIONS TO THE JURY

**Members of the Jury:**

Members of the jury, now that you have heard the evidence, it is my duty to instruct you as to the applicable law.  It is your duty as jurors to follow the law as stated in the instructions of the Court and to apply it to the facts as you find them from the evidence in the case.  These instructions contain all the law which may be applied by you and the rules by which you should weigh the evidence and determine the facts in issue.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  You are not to be concerned with the wisdom of any rule of law stated by the Court.  Regardless of any opinion you may have as to what the law ought to be, you must follow the law as I instruct you.  Your decision must be based upon probabilities, not possibilities.  It may not be based upon speculation or guess work.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case.  It is not my function to determine the facts, but rather

yours.

## SUMMARY OF CLAIMS

As you were previously instructed, Dickson seeks a declaration that the '069 patent is invalid and unenforceable.  It also asserts that Patent Enforcement Team tortiously interfered with its business relationships.  It contends that it is entitled to damages caused by the alleged tortious interference.

Patent Enforcement Team contends that the rumble-strip cutting machines sold by Dickson infringe claim 5 of the '069 patent.  Patent Enforcement Team alleges that Midstate directly infringed the patent by using the machine.  It further asserts that Dickson willfully induced and contributed to the infringement by selling the machine.  Patent Enforcement Team contends that it is entitled to damages caused by the alleged infringement.

Dickson and Midstate deny infringement or inducement of infringement and contend that the '069 patent is invalid and unenforceable.  They contend that the method described in claim 5 of the patent was known, used by others, and described in a patent and printed publication before the inventor named in the patent invented it.  They also allege that the method in claim 5 was in public use in the United States more than one year prior to the date the application for the patent was filed.  They assert that the method in claim 5 was obvious to one of ordinary skill in the art at the time the patent application was filed.  They further contend that the inventor of the '069 patent and/or his attorneys, employees, or agents made material misrepresentations or omissions with the intent to deceive the Patent and Trademark Office, and that Patent Enforcement Team or its representatives made material misrepresentations or omissions in connection with the reexamination of the patent.

## BURDEN OF PROOF

In a civil action, such as this one, the law provides which party is to prove certain things to you.  This is called "burden of proof."

When I say that a party has the burden of proving any proposition by a "preponderance of the evidence," I mean you must be persuaded, considering all the evidence in the case, that the proposition on which such party has the burden of proof is more probably true than not true.  A preponderance of the evidence does not mean the greater number of witnesses testifying to a fact, but means what seems to you more convincing and more probably true.

When I say that a party has the burden of proving any proposition by "clear and convincing evidence," I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable.  This is a higher burden of proof than a preponderance of the evidence.

In determining whether any fact in issue has been proved by a preponderance of the evidence or by clear and convincing evidence, you may consider the testimony of all of the witnesses, regardless of who called them, and all exhibits received in evidence, regardless of who produced them.

## **SEPARATE CLAIMS**

The parties in this case assert several claims.  Each of these claims and the evidence applicable to them is to be considered separately.

## CONSIDER EACH DEFENDANT SEPARATELY

Patent Enforcement Team has asserted an infringement claim against Dickson, Sawhorse, and Midstate and claims that each is liable to it in damages.  I have resolved the claims as to Sawhorse as a matter of law and you should not be concerned any further as to Sawhorse.  As to the claims against Dickson and Midstate, you must consider separately the potential liability of each party to Patent Enforcement Team under the evidence and the Court's instructions as to the applicable law.  The fact that one party may be found liable to Patent Enforcement Team should not control your verdict with respect to another party, unless I specifically instruct you to the contrary in these instructions.

## CORPORATE PARTIES

The parties in this case are corporations and limited liability companies. These legal entities can act only through their officers, members, agents, and employees. Their acts and omissions, done within the scope of their employment, that is, incidental to and in furtherance of their employer's business, whether such acts and omissions be authorized or unauthorized, are considered the acts and omissions of the entity itself.

Corporations and limited liability companies are entitled to the same treatment as individuals, and you should decide the case with same impartiality you would use in deciding a case between individuals.

## EVIDENCE

The evidence in the case consists of the sworn testimony of the witnesses, all exhibits which have been received in evidence, and all facts which have been admitted or stipulated. The arguments and statements of the attorneys are not evidence.

It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  When I have sustained an objection to a question, you are to disregard the question, and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, I am not, unless expressly stated, indicating any opinion as to the weight or effect of such evidence.  As stated before, you are the sole judges of the facts and that includes the credibility of all witnesses and the weight and effect of all evidence.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of evidence from which a jury may properly find the facts in a case - direct evidence and circumstantial evidence.  "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  "Indirect or circumstantial" evidence is the proof of a chain of facts and circumstances indicating the existence or nonexistence of some other fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

## EVALUATION OF EVIDENCE AND
## CREDIBILITY AND NUMBER OF WITNESSES

In deciding the facts, you may have to decide which testimony to believe and which not to believe.  You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony.  In considering the testimony of any witness, you may take into account many factors, including the witness' relationship to the parties; the witness' interest, if any, in the outcome of the case; the witness' manner of testifying; the witness' opportunity to observe or acquire knowledge concerning the facts about which he or she has testified; any bias or prejudice the witness may have; the witness' candor, fairness, and intelligence; and the extent to which the witness' testimony has been supported or contradicted by other credible evidence.  You may, in short, accept or reject the testimony of any witness in whole or in part.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or the nonexistence of any fact.  You may find that the testimony of a smaller number of witnesses as to any fact is more credible that the testimony of a larger number of witnesses to the contrary.  The test is not which side brings the greater number of witnesses or presents the greater quantity of evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

You may use the notes taken by you during the trial.  However, the notes should not be substituted for your memory.  Remember, notes are not evidence.  If your memory should differ from your notes, then you should rely on your memory and not on your notes.

## WITNESS - IMPEACHMENT

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has made statements that are inconsistent with the witness' present testimony.  If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such weight, if any, as you think it deserves.

If any witness is shown knowingly to have testified falsely concerning any material matter, you have the right to distrust such witness' other testimony, and you may reject all the testimony of that witness, or give it such weight as you think it deserves.

## OPINION EVIDENCE - EXPERT WITNESS

Witnesses who, by education and experience, have become expert in some area, science, profession, or calling, may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

## **VIDEOTAPE DEPOSITION AND DEPOSITION EVIDENCE**

During the trial, certain testimony has been presented by way of video or written depositions. You are instructed that you are not to discount this testimony for the sole reason that it comes to you in the form of a deposition.  It is entitled to the same consideration and the same judgment on your part with reference to its weight and credibility as is the testimony of witnesses who have taken the stand.

# CHARTS AND SUMMARIES

Certain charts and summaries have been admitted into evidence in order to summarize facts shown by documents and records which themselves are too voluminous to be conveniently examined in Court.  You should consider the evidence presented concerning the preparation and accuracy of those charts and summaries, and give each of them such weight as you believe it deserves.

In other words, they are a compilation or a summary of the evidence and, should you find that there is a variance between the summary exhibits and the documents from which they are taken, then you should be governed by the evidence rather than by the summary exhibits.

## CLAIM CONSTRUCTION – GENERALLY

Before you decide whether Midstate has infringed and/or Dickson has induced infringement of a claim of the '069 patent or if the '069 patent is invalid, you will have to understand the patent claim. Patent claims are numbered sentences at the end of the patent. The patent claim involved here is claim 5, beginning at column 6, line 7 of the patent, which is plaintiff's exhibit 1 in evidence.

A claim is a "word picture" intended to define, in words, the boundaries of the invention. Only a claim of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each claim must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

## CLAIM CONSTRUCTION FOR THIS CASE

It is my job as judge to provide you with the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether the asserted claim of the patent has been infringed and whether it is invalid.  I will now tell you the meanings of the following words and groups of words from claim 5.

The term "road" as used in this claim means that portion of the roadway designed or ordinarily used for travel which does not include the shoulder.

The phrase "moving the rotating cutting cylinder along the road, and simultaneously, moving said cylinder alternately up above the road surface and down into said road surface, to thereby form a plurality of generally parallel grooves" means the cutting cylinder simultaneously rotates, moves along the road and moves up and down through at least two cuts.

The phrase "generally parallel grooves" means grooves which are arranged side by side with their long sides parallel to each other and which are generally oriented transverse to the travel direction of the road.

You should give the rest of the words in the claim their ordinary meaning in the context of the patent specification and prosecution history.

## INFRINGEMENT – GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Patent Enforcement Team has proven that Midstate infringed and/or Dickson induced infringement of claim 5 of the '069 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

Here, Patent Enforcement Team alleges that the rumble-strip cutting machine manufactured and sold by Dickson and used by Midstate infringes claim 5 of  Patent Enforcement Team's '069 patent.  The method employed by the rumble-strip cutting machine is referred to in these instructions as the accused method.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused method is covered by at least one claim of the patent.  Indirect infringement results if a party induces another to infringe a patent.

As I have previously told you, Patent Enforcement Team asserts a direct infringement claim against Midstate and asserts an inducement to infringe claim against Dickson.

## DIRECT INFRINGEMENT – KNOWLEDGE OF
## PATENT OR INTENT TO INFRINGE IS IMMATERIAL

In this case, Patent Enforcement Team asserts that Midstate has directly infringed the '069 patent.  Midstate is liable for directly infringing the patent if you find that Patent Enforcement Team has proven by a preponderance of the evidence that Midstate performed a method embodying the invention defined in claim 5 of Patent Enforcement Team's patent.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent.

## DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

To determine literal infringement, you must compare the accused method with claim 5 of the '069 patent, using my instructions as to the meaning of the patent claim.

A patent claim is literally infringed only if the accused method includes each and every method step in the patent claim. The same method step of the accused method may satisfy more than one element of the claim. If the accused method does not contain one or more method steps recited in the claim, Midstate has not literally infringed the claim.

The accused method should be compared to the invention described in the patent claim it is alleged to infringe, not to the Patent Enforcement Team's preferred or commercial embodiment of the claimed invention.

## <u>DIRECT INFRINGEMENT – INFRINGEMENT OF OPEN-ENDED CLAIMS</u>

The preamble to claim 5 uses the phrase "A method of forming a plurality of grooves in the surface of a road, the method including the steps of..."  The word "including" means "including the following but not excluding others."

If you find that the accused method includes all of the elements in claim 5, the fact that the accused method might include additional method steps would not avoid literal infringement of the claim.

## DETERMINATION OF DIRECT INFRINGEMENT

If you find by a preponderance of the evidence that each and every limitation of claim 5 of the '069 patent is present in the accused method, you must find that Midstate has directly infringed that claim.

With respect to this issue, I have determined, as a matter of law, that if claim 5 of the '069 patent is determined to be valid and enforceable, then the 160 feet of rumble strips cut by Midstate in 2005 near Woodward, infringe the claim. Therefore, if you decide that claim 5 of the patent is valid and enforceable, you must make a further determination as to whether Midstate has infringed the patent over and above the 160 feet.

Dickson and Midstate contend that, except as to the 160 feet of rumble strips I just referred to, the rumble strips cut using the Dickson machine were not cut in the road. I have given you a definition of "road" previously in these instructions. Patent Enforcement Team must prove by a preponderance of the evidence that rumble strips cut using the Dickson machine were made in the road as I have defined it. If you do not so find, you must find that there was no infringement.

## <u>INDUCING PATENT INFRINGEMENT</u>

Patent Enforcement Team asserts that Dickson has actively induced another to infringe the patent. A party induces patent infringement if it purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur unintentionally.

To show induced infringement, Patent Enforcement Team must prove by a preponderance of the evidence that:

**First**:      Dickson encouraged or instructed another how to perform a process in a manner that infringes the '069 patent;

**Second**:      Dickson knew of the '069 patent at the time of the alleged encouragement or instruction;

**Third:**      Dickson specifically intended to encourage or instruct another to infringe the '069 patent; and

**Fourth**:      the other party infringed the '069 patent.

It is not necessary to show that Dickson has directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, Dickson has not induced infringement.

You are instructed as a matter of law that Dickson did not induce infringement as to the 160 feet, even if you find the patent to be valid and enforceable.

## INVALIDITY – GENERALLY

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in the patent must be new, useful, and nonobvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.

A patent is presumed valid.  However, the fact that the Patent Office grants a patent does not necessarily mean that any invention claimed in the patent in fact deserves the protection of a patent.  For example, the Patent Office may not have had available to it all the evidence that has been presented to you or it may have incorrectly understood or evaluated the information presented to it.  A person accused of infringement has the right to argue in court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

Dickson and Midstate have challenged the validity of claim 5 of the '069 patent.  Invalidity of a patent is a defense to patent infringement.  In order to establish this defense, Dickson and/or Midstate must prove, by clear and convincing evidence, that the patent claim is invalid based on anticipation or obviousness.

I will now explain to you in detail each of the asserted grounds for invalidity.

## <u>PRIOR ART – DEFINED</u>

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before.  That which came before is referred to as the "prior art."

The following instructions I will give you as to prior art will apply when you make your determinations as to anticipation and as to obviousness, which I will explain to you in further detail shortly.

In order to establish invalidity of the patent on these grounds, Dickson and/or Midstate must prove by clear and convincing evidence that the items they rely on are prior art.  In order to do so, they must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws.  These categories include:

1. any method that was publicly known or used by others in the United States before the patented invention was made;

2. patents that issued more than one year before the filing date of the '069 patent or before the invention was made;

3. publications having a date more than one year before the filing date of the '069 patent or before the invention was made;

4. any method that was in public use or on sale in the United States more than one year before the '069 patent was filed;

5. any method that was made by anyone before the named inventor created the patented method where the method was not abandoned, suppressed, or concealed.

In this case, Dickson and Midstate contend that the following items are prior art:

a. Mr. Whitney's observations of rumble strips in Florida

**<u>Court's Instruction to the Jury - Page 25</u>**

b.      The operation of the Modified Swantson Equipment Target Saw

c.      The California Department of Transportation Highway Research Report

d.      The Spangler patent

e.      The Wirtgen patents

f.      The Kennedy patent

## **PRIOR ART – DATE OF INVENTION AND DATE OF FILING**

Many of the different categories of prior art refer to the date at which the inventor made the  invention.  This is called the "date of invention."  In this case, the date of invention is December 10, 1986.

The different categories may also refer to the date of the filing of the patent application.  In this case, the date of filing is also December 10, 1986.

## **PRIOR ART – PRIOR PUBLIC KNOWLEDGE**

If the invention recited in the asserted claim of the patent was publicly known by others in the United States before the patent applicant invented it, this knowledge is prior art.

Private or secret knowledge is not prior art.  Similarly, if something is only publicly known outside of the United States, it is not prior art.

## PRIOR ART – PRIOR PUBLIC USE

If the invention defined by the asserted claim was publicly used by someone other than the inventor in the United States before it was invented by the inventor or was publicly used by anyone in the United States more than one year before the inventor filed his patent application, this use is prior art.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  Secret use by a third party is not prior art.  If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose, then such a use does not invalidate the claim.

Proof of prior public use of a claimed invention requires more than testimony of interested witnesses.  It must be proved by testimony of a disinterested witness or with tangible evidence, such as a device; a sketch, drawing, or photograph showing the device; a model of the device; a written document, like notes, letters, invoices, or notebooks; or some other contemporaneous record.

## <u>PRIOR ART – PRIOR PRINTED PUBLICATION</u>

If the invention defined by the claim of a patent was described in a printed publication before it was invented by the inventor or more than one year prior to the filing date of the patent application, this publication is prior art.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies.  An issued patent is a printed publication.  A published patent application is a printed publication as of its publication date.

# PRIOR ART –  PRIOR INVENTION

If the invention defined by the claim of a patent was invented by another person in the United States before it was invented by the inventor, and that other person did not abandon, suppress, or conceal the invention, this prior invention is prior art.

In order to establish invalidity of the patent based on prior invention, Dickson and/or Midstate must prove by clear and convincing evidence either that, before Mr. Whitney invented his invention, another party reduced to practice a method that included all of the elements of claim 5 of the '069 patent or that another party was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice.  In addition, they must show that the other party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

If the prior invention was abandoned, suppressed, or concealed, it is not prior art. However, it is not necessary that Mr. Whitney had knowledge of that prior invention.

Proof of prior invention of a claimed invention requires more than testimony of interested witnesses.  It must be proved by testimony of a disinterested witness or with tangible evidence, such as a device; a sketch, drawing, or photograph showing the device; a model of the device; a written document, like notes, letters, invoices, or notebooks; or some other contemporaneous record.

## **PRIOR ART – PRIOR PATENT**

If the invention defined by the claim of a patent was patented in the United States or a foreign country before it was invented by the inventor or more than one year before the inventor filed his patent application, this prior patent is prior art.

## ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention.  Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."   Under the patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, Dickson and/or Midstate must present clear and convincing evidence showing that the claimed invention is not new.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular prior art.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently occurred as a natural result of its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art.  Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.  Thus, the prior use

of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

For a single item of prior art to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time the invention of the patent was made and one year before the application for the patent was filed, and you may consider evidence that sheds light on the knowledge such a person would have had.

If you find by clear and convincing evidence that claim 5 of the '069 patent was anticipated, then you must find that the claim is invalid.

## **DETERMINATION OF OBVIOUSNESS**

Dickson and Midstate contend that the invention claimed in claim 5 of the '069 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.  If you find that Dickson and/or Midstate have proved obviousness by clear and convincing evidence, then you must find that claim 5 of the '069 patent is invalid.

## OBVIOUSNESS

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art.  The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention?  If the answer to that question is yes, then the patent claim is invalid.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention.  The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention.  Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the '069 patent. You should not use the '069 patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill at the time the invention was made.

Dickson and Midstate have the burden of proving by clear and convincing evidence that claim 5 of the '069 patent is invalid for obviousness.

Before determining whether or not Dickson and/or Midstate have established obviousness of the claimed invention, you must determine the following factual matters, each of which must be established by clear and convincing evidence:

1.      The scope and content of the prior art relied upon by Dickson and Midstate;

2.      The difference or differences, if any, between claim 5 of the '069 patent and the prior art; and

3.      The level of ordinary skill in the art at the time the invention of the '069 patent was made.

4.      Objective factors indicating non-obviousness, including commercial success, long-felt need, failure of others, copying, unexpected results, and acceptance of licenses.

Against this background of facts, you will then make your conclusion whether or not the claimed subject matter would have been obvious to a person of ordinary skill in the art at the time the invention was made.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**Court's Instruction to the Jury - Page 37**

## SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Dickson and Midstate.  You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by the '069 patent claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

In examining the prior art, you should take into account not only what the prior art expressly discloses, but also anything that inherently occurred as a result of practicing what was expressly disclosed in that prior art.

The parties disagree as to whether the Shed slot cutting operation and the Shed cleaning operation are within the scope of relevant prior art.  If you determine that the Shed slot cutting operation and the Shed cleaning operation are not within the scope of relevant prior art, then you should ignore them in deciding whether the claimed invention would have been obvious.

## DIFFERENCES BETWEEN
## THE CLAIMED INVENTION AND THE PRIOR ART

In determining the differences between the invention covered by the patent claim and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether it would have been obvious to combine elements of the prior art, the question is not whether the combination was obvious to the inventor but whether the combination was obvious to a person with ordinary skill in the art. In making this determination, you should take account of the inferences and creative steps that a person of ordinary skill in the art would employ. Any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. The common sense of one skilled in the art can demonstrate why some combinations would have been obvious. It is not necessary to find precise teachings directed to the specific subject matter of the challenged claim.

## LEVEL OF ORDINARY SKILL

In reaching your determination as to whether or not the claimed invention would have been obvious, you should consider the level of ordinary skill in the pertinent art. When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties to show:

1. the level of education and experience of persons actively working in the field at the time of the invention;

2. the types of problems encountered in the art at the time of the invention;

3. the prior art patents and publications;

4. the activities of others;

5. prior art solutions to the problems; and

6. the sophistication of the technology.

Based on the factors listed and the evidence presented, you must determine the level of ordinary skill in the art at the time of the invention.

When you decide the issue of obviousness, you must decide whether or not the invention would have been obvious to one having this ordinary level of skill in the art. In determining whether the invention of claim 5 of the '069 patent would have been obvious to a person of ordinary skill in the art, you must presume that person would have knowledge of all relevant prior art.

## FACTORS INDICATING NONOBVIOUSNESS

Before deciding the issue of obviousness, you must consider certain factors which, if established, weigh in favor of finding that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

## COMMERCIAL SUCCESS

One of the factors you should consider is whether Patent Enforcement Team has shown any commercial success of products covered by the '069 patent due to the merits of the invention. To prove this, Patent Enforcement Team would have to provide evidence to satisfy you that there is a causal connection between the commercial success of the products and the claimed invention, which would tend to indicate that the invention would not have been obvious.

However, if you conclude that commercial success of the product is due to advertising, promotion, salesmanship or the like, or to features of the product other than those claimed in the '069 patent, rather than to the claimed invention, then the fact that the product enjoyed commercial success is not related to whether the invention would have been nonobvious.

## LONG-FELT NEED

One of the factors you should consider is whether or not Patent Enforcement Team has shown a long-felt need in the art which was satisfied by the invention of the '069 patent, which would tend to indicate that the invention would not have been obvious. However, if

you were to conclude that there was no long-felt need in the pertinent art field or that the long-felt need was satisfied due to advances in unrelated technology, then Patent Enforcement Team would not have carried its burden of proof on this factor.

## FAILURE OF OTHERS

One of the factors you should consider is whether Patent Enforcement Team has shown that others had tried, but failed to solve the problem solved by the invention of the '069 patent, which would tend to indicate that the invention would not have been obvious. To prove this, Patent Enforcement Team  must show that it was the merits of the invention that allowed the inventor of the '069 patent to succeed.  If advances in unrelated technology allowed the inventor to succeed, then Patent Enforcement Team would not have carried his burden of proof on this factor.

## COPYING

One of the factors you should consider is whether or not Patent Enforcement Team has shown copying by others of the invention claimed in the '069 patent.  If you were to find that others copied the invention because of its merits, this would tend to indicate that the invention would not have been obvious.

## UNEXPECTED RESULTS

One of the factors you should consider is whether or not Patent Enforcement Team has shown unexpected superior results achieved by the invention claimed in the '069 patent. To prove this, Patent Enforcement Team must show that it was the patented invention that caused the unexpected results, which would tend to indicate that the invention would not

have been obvious.  If there were not unexpected superior results or if the unexpected results were due to a feature unrelated to the invention, then Patent Enforcement Team would not have carried its burden of proof on this factor.

**ACCEPTANCE OF LICENSES**

One of the factors you should consider is whether or not Patent Enforcement Team has shown that others have accepted licenses under the '069 patent because of the merits of the claimed invention.  If others accepted licenses due to factors such as the cost of litigation or the low cost of the license, then it has not been established that the acceptance of licenses was due to the merits of the invention itself.  If you were to find that others took licenses as a result of the merits of the claimed invention, however, this would tend to indicate that the invention would not have been obvious.

## **FACTORS INDICATING OBVIOUSNESS –**
## **INDEPENDENT INVENTION BY OTHERS**

In reaching your determination on the issue of obviousness, you should also consider whether or not the claimed invention was invented independently by other persons, either before it was invented by the inventor or at about the same time.  Just as the failure of others to make the invention may be evidence that an invention would not have been obvious, independent making of the invention by persons other than the inventor at about the same time may be evidence that the invention would have been obvious, depending on the circumstances.

## **OBVIOUS TO TRY**

In determining obviousness, you should consider whether the claimed invention would have been obvious to try by a person of ordinary skill in the art.  When there is a motivation, like a design need or market pressure, to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In such an instance, the fact that a combination was obvious to try might show that it was obvious.

## <u>REEXAMINATION STANDARD</u>

During the reexamination of the '069 patent, the patent examiner allowed the patentee to overcome the initial obviousness rejection based on the examiner's application of what is known as the teaching, suggestion, and motivation test.  After the reexamination in this case was completed, the U. S. Supreme Court concluded, in the course of other litigation, that the teaching, suggestion, and motivation test was being improperly applied by some courts.  The reexaminer's determination as to obviousness of the '069 patent had relied on the approach of those courts which improperly applied the test.  You are therefore instructed that the reexaminer's determination as to obviousness of the '069 patent is not entitled to a presumption of validity due to this improper application of the applicable test.

## INEQUITABLE CONDUCT – GENERALLY

Dickson and Midstate contend that Patent Enforcement Team may not enforce the '069 patent against them because the inventor or Patent Enforcement Team engaged in inequitable conduct before the Patent and Trademark Office during prosecution or reexamination of the '069 patent.

"Inequitable conduct" refers to the intentional failure to meet the duty of candor and good faith.  Applicants are required to prosecute patent applications with candor, good faith, and honesty.  This duty of candor and good faith extends to all inventors named on a patent application, all attorneys and agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. Each individual with such a duty must disclose all information known to that individual to be material.  This duty continues up to the time that the reexamination certificate is issued.

Dickson and Midstate bear the burden of establishing inequitable conduct by clear and convincing evidence.  To show that the '069 patent was obtained through inequitable conduct, Dickson and/or Midstate must prove that Mr. Whitney and/or Patent Enforcement Team, their representative, or someone involved in a substantial way with the prosecution of the application or the reexamination of the patent withheld or misrepresented information that was material to the examination of the patent application or the reexamination of the patent, and that the individual or individuals acted with an intent to deceive or mislead the Patent and Trademark Office.

## INEQUITABLE CONDUCT – MATERIALITY

Dickson and/or Midstate have presented evidence they contend was material information known to Mr. Whitney, his representative, or someone else involved in a substantial way in the prosecution of the application and which was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '069 patent. If you find that Mr. Whitney, his representative, or other individuals involved in some substantial way with the prosecution of the application or the reexamination of the patent withheld or misrepresented information when applying for the '069 patent or during the reexamination, you must determine whether that information was material.

For the purposes of the prosecution of the patent, information is material if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether or not to allow the application to issue as a patent. However, information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

Dickson and/or Midstate have also presented evidence which they allege shows that Patent Enforcement Team or its representatives withheld or misrepresented material information in connection with the Patent Office's reexamination of the '069 patent. For the purposes of the reexamination of a patent, information is material to patentability when it is not cumulative to information of record in the reexamination proceeding, and is a patent or printed publication that establishes, by itself or in combination with other patents or printed publications, a prima facie case of unpatentability of a claim, or is information that refutes or

is inconsistent with a position the patent owner takes in opposing an argument of unpatentability relied on by the Patent and Trademark Office or in asserting an argument of patentability.  This includes information that would be considered important by a reasonable patent examiner, even if it would not ultimately render the patent invalid.

## INEQUITABLE CONDUCT – INTENT TO DECEIVE OR MISLEAD

Dickson and/or Midstate have presented evidence that they contend was material information that was withheld or misrepresented to the Patent and Trademark Office during the prosecution or reexamination of the '069 patent with the intent to deceive or mislead the Patent and Trademark Office.  If you determine that material information was withheld or misrepresented to the Patent and Trademark Office, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the Patent and Trademark Office.  Intent to deceive the Patent and Trademark Office may be found from direct evidence.  Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.  In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct, the importance of the withheld or misrepresented information to the issues being decided, and evidence of the absence or presence of good faith.

Intent may be inferred where a patent applicant knew, or should have known, that withheld information would be material to the Patent and Trademark Office's consideration of the patent application.  An applicant should know information is material when the examiner repeatedly raises an issue to which the information relates.

## INEQUITABLE CONDUCT – BALANCING OF MATERIALITY AND INTENT

If you determine that Dickson and/or Midstate have proved by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the Patent and Trademark Office, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '069 patent.  Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less.

## **WILLFUL INFRINGEMENT**

If you find that claim 5 of the '069 patent is valid and enforceable, and if you further find that infringement, or inducement of infringement, of the patent occurred, then you must determine if the infringement or inducement was willful.

With respect to Midstate, I have already instructed you that its cutting of the 160 feet of rumble strips in 2005 near Woodward constitutes infringement if you conclude the patent is valid and enforceable. If you so determine, you must therefore decide whether that infringement, or any other infringement you conclude Midstate has committed, was willful.

With respect to Dickson, you are instructed that, as a matter of law, Dickson did not induce Midstate's cutting of the 160 feet of rumble strips near Woodward in 2005.  If you conclude that some other infringement has been committed by Midstate and that Dickson induced it, then you must determine whether that inducement of infringement by Dickson was willful.

To establish willfulness, Patent Enforcement Team must prove by clear and convincing evidence that the alleged infringer or inducer was objectively reckless.  This means that Patent Enforcement Team must prove that:

**First**:      The alleged infringer or inducer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; and

**Second**:     The alleged infringer or inducer either knew or should have known that claim 5 of the '069 patent was valid and was infringed.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether an alleged infringer or inducer intentionally copied the claimed invention or a product covered by Patent Enforcement Team's patent, whether the alleged infringer or inducer exercised due care to avoid infringing the patent, whether the alleged infringer or inducer relied on competent legal advice, and whether the alleged infringer or inducer presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

In making a determination of willfulness, you should not consider the state of mind of the alleged infringer or inducer.  Rather, your inquiry should be an objective one.

You are instructed that there is no affirmative obligation to obtain the opinion of counsel.  If an opinion is obtained and objectively relied upon, this is a factor to consider in determining willfulness.  An opinion of counsel can be objectively relied upon even if there are differences in the opinion and a ruling of the court or a finding of the jury.

## PATENT INFRINGEMENT DAMAGES- GENERALLY

If you find that claim 5 of the '069 patent is valid and enforceable, then you must determine the amount of damages to be awarded Patent Enforcement Team for infringement of the claim.  On the other hand, if you determine that claim 5 of the '069 patent is invalid or unenforceable, then you need not address damages in your deliberations.

As I have previously instructed you, I have determined as a matter of law that Midstate's use of the accused method to cut the 160 feet of rumble strips near Woodward in 2005 infringed claim 5 if the claim is determined to be valid and enforceable.  Therefore, if you have so determined, you must award damages to Patent Enforcement Team for that infringement.  If you also determine, under the other instructions I have given you, that Midstate infringed claim 5 by cutting strips in other locations, in addition to the 160 feet of rumble strips near Woodward, then your determination of damages must also include damages attributable to any additional infringement you determine to have occurred.

The amount of damages to be paid by an infringing party must be adequate to compensate Patent Enforcement Team for the infringement by that party.  Your damage award should put Patent Enforcement Team in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You must consider the amount of injury suffered by Patent Enforcement Team without regard to the other parties' gains or losses from the infringement.

You may not add anything to the amount of damages to punish the accused infringer or to set

an example, even if you find willful infringement.

Patent Enforcement Team has the burden of proving each element of its damages by

a preponderance of the evidence.

## PATENT INFRINGEMENT DAMAGES – REASONABLE ROYALTY

The patent law specifically provides that the amount of damages that each infringing party must pay Patent Enforcement Team may not be less than a reasonable royalty for the use that the infringing party made of Patent Enforcement's invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of a particular infringing party taking place just before the infringement began.  You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

## PATENT INFRINGEMENT DAMAGES –
## RELEVANT FACTORS TO REASONABLE ROYALTY

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.      Any royalties received by the licensor for the licensing of the '069 patent, proving or tending to prove an established royalty.

2.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to which the manufactured product may be sold.

3.      The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

4.      The duration of the '069 patent and the term of the license.

5.      The established profitability of the product made under the '069 patent; its commercial success; and its current popularity.

6.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

7.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

8.      The extent to which Dickson and/or Midstate have made use of the invention; and any evidence that shows the value of that use.

9.      The portion of any profit that arises from other products licensed or licenses for other patents.

10.     The opinion testimony of qualified experts.

11.     The amount that a licensor and a licensee (such as Dickson and/or Midstate) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

12.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## PATENT INFRINGEMENT DAMAGES –
## REASONABLE ROYALTY AND TIMING

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Dickson and/or Midstate after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  You may only consider this information, however, if it was foreseeable at the time that the infringement began.

## INTERFERENCE WITH BUSINESS RELATIONSHIP – ELEMENTS

Dickson claims that it had business relationships with Diversified Industries, Inc., Brandt Equipment, LLC, Sawhorse, and Midstate.   Dickson also claims that it had prospective business relationships with others.   Dickson asserts that Patent Enforcement Team intentionally and wrongfully interfered with these established and prospective business relationships, and that Dickson suffered damages as a direct result.   In order to succeed on the claim of intentional interference with business relationships, Dickson must show by the preponderance of the evidence that:

**First**:          Dickson had a valid business relationship or expectancy;

**Second**:          Patent Enforcement Team knew or under the circumstances reasonably should have known about the business relationship or expectancy;

**Third**:          Patent Enforcement Team interfered with the business relationship or expectancy;

**Fourth**:          Patent Enforcement Team's alleged interference was malicious and wrongful, and neither justified, privileged, nor excused; and

**Fifth**:          Dickson suffered damages as a direct result of Patent Enforcement Team's alleged interference.

If Dickson proves each of these elements by the preponderance of the evidence, you must find in favor of Dickson on the tortious interference claim.   However, if Dickson fails to prove any of these elements by the preponderance of the evidence, then you must find in favor of Patent Enforcement Team.

## **MALICE – DEFINED**

Malice is the intentional performance of a wrongful act without justification or excuse.

## <u>INTENT – DEFINED</u>

A party's actions are intentional if that party either desires to interfere with another's business relationships or if that party is substantially certain that its actions will interfere with these relationships.

## PRIVILEGE – DEFINED

It is not unlawful for one to interfere with the business relationships of another if done by fair means, accompanied by honest intent, and done to better one's own business and not to principally harm another.

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally interferes with a business relationship, acts with privilege if he believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

If you find that the '069 patent is valid and enforceable, then you are instructed that Patent Enforcement Team's  reasonable conduct in seeking to enforce that patent is privileged.

## INTERFERENCE WITH BUSINESS RELATIONSHIP – ACTUAL DAMAGES

If you decide the interference with business relationships claim in favor of Dickson, you must then fix the amount of its actual damages.  This is the amount of money that will reasonably and fairly compensate Dickson for the losses it has sustained from the interference with its established and prospective business relationships.  The amount of damages does not have to be proved with mathematical certainty, but there must be a reasonable basis for the award.

## INTERFERENCE WITH BUSINESS RELATIONSHIP – PUNITIVE DAMAGES

If you find in favor of Dickson as to its interference with business relationships claim, and grant it actual damages, then you must also determine whether Patent Enforcement Team acted in reckless disregard of the rights of others and/or acted intentionally and with malice towards others. Dickson has the burden of proving this by clear and convincing evidence.

The conduct of Patent Enforcement Team was in reckless disregard of another's rights if Patent Enforcement Team was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.

Malice involves either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse.

If you find that Patent Enforcement Team acted in reckless disregard of the rights of others or intentionally and with malice towards others, you may award punitive damages against Patent Enforcement Team. If you find that Patent Enforcement Team did not act in reckless disregard of the rights of others or intentionally and with malice towards others, you may not award punitive damages against Patent Enforcement Team.

Punitive damages are not to be considered as compensation to Dickson, but as punishment to Patent Enforcement Team, and as an example to others to deter them from like conduct.

The law does not require you to award punitive damages, and if you do so, you must use sound reason in setting the amount.  You should be aware that the purpose of punitive damages is to punish and not destroy a defendant.  In determining the amount of punitive damages, you may consider the following factors:

1. The seriousness of the hazard to the public arising from any misconduct by Patent Enforcement Team;
2. The profitability to Patent Enforcement Team of any misconduct by it;

3. How long the conduct lasted and whether it is likely to continue;

4. Whether there were attempts to conceal the alleged misconduct;

5. How aware Patent Enforcement Team  was of the conduct and its consequences and how aware it was of the hazard and of its excessiveness;

6. The attitude and conduct of Patent Enforcement Team upon finding out about the misconduct/hazard;

7. The financial condition of Patent Enforcement Team; and

8. The number and level of employees involved in causing or concealing the alleged misconduct.

If you find that Patent Enforcement Team acted in reckless disregard of the rights of others, you may, but are not required to, award punitive damages in an amount not to exceed the greater of $100,000.00 or the amount of actual damages you have previously awarded.

If you find that Patent Enforcement Team acted intentionally and with malice towards others, you may, but are not required to, award punitive damages in an amount not to exceed $500,000.00, or twice the amount of actual damages you have previously awarded, or the increased financial benefit derived by Patent Enforcement Team as a direct result of the conduct causing the injury to Dickson and other persons or entities.

## EFFECT OF INSTRUCTIONS AS TO DAMAGES

The fact that I have instructed you as to the proper measure of damages should not be considered by you as intimating any view of mine as to which party in this litigation is entitled to your verdict.  Instructions as to the measure of damages are given for your guidance, in the event you should find in favor of a party seeking damages in this case.

## **CLOSING ARGUMENTS**

You will now hear the arguments of counsel.  You are reminded that the attorneys' statements and arguments are not evidence.  What they have said in their opening statements and during the trial, and what they will say in their closing arguments is intended to help you interpret the evidence, but it is not evidence.  If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember.

# **CLOSING**

You will note from the oath about to be taken by the bailiff, that during the course of your deliberations, the bailiff, as well as other persons, is forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

When you retire you should elect one juror as your foreperson.  That person will preside over the deliberations and speak for you with the Court.  You will then discuss the case with your fellow jurors to reach agreement if you can do so.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.  You must not use any method of chance in arriving at your verdict.

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

You should not let sympathy, sentiment or prejudice enter into your deliberations, but you should discharge your duties as jurors in an impartial and conscientious manner under your oaths and return such verdict as the evidence warrants under these instructions

A form of verdict will be sent to the jury room with you, along with these written instructions of the Court.  I suggest you study the verdict form early in your deliberations so you know what you must decide.  All of you must agree on a verdict.  When you have reached a decision, the foreperson will fill in, date and sign the verdict form.  Notify the bailiff by a written note to the Court when you have agreed on a verdict, so that you may return it into open Court.

If it becomes necessary during your deliberation to communicate with me, you may send a note through the bailiff signed by your foreperson.  In the message do not tell me how you stand on your verdict.  No member of the jury should ever attempt to communicate with me except by a signed writing.

The verdict of the jury in this case must be unanimous, which means that each juror must agree on it.  It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if that can be done without disregard of individual judgment.

Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence in the case with fellow jurors.  In the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion, if convinced it is erroneous, but no juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict.

Signed this 28th day of September, 2007.


_____
JOE HEATON
UNITED STATES DISTRICT JUDGE